**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Robert DiBERNARDO and Theodore Rothstein, Defendants–Appellees.**

No. 87–5387.

United States Court of Appeals, Eleventh Circuit.

Aug. 21, 1989.

---

Sara Criscitelli, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Ralph J. Schwarz, Jr., Herald P. Fahringer, New York City, for defendants-appellees.

Before JOHNSON and CLARK, Circuit Judges, and VINSON *, District Judge.

VINSON, District Judge:

This is the fourth occasion that this Court has considered an appeal involving this case. Since Robert DiBernardo and Theodore Rothstein were tried, convicted, and sentenced in 1981, the case has expanded and grown like kudzu to encompass numerous collateral issues. The issue now before us is simply whether the trial court properly granted these two defendants a new trial. The government contends that the district court abused its discretion in considering the motion for new trial, and that, even if the court could consider the motion, it did not have jurisdiction to grant appellee DiBernardo a new trial because he has been missing since June 1985. We affirm the granting of a new trial for Rothstein, but reverse and remand as to DiBernardo.

I. Factual Background

In 1977, the FBI began an undercover investigation of all major publishers and distributors of adult films and magazines throughout the United States. Special Agents Patrick Livingston and Bruce Ellavsky posed as pornographers in Miami, Florida, under false identities. These two agents contacted national distributors of pornography and ordered material which was shipped to them in Miami. This undercover operation and the resulting proceedings generally became known as "Miporn," for Miami Pornography.

Eventually, a grand jury in the Southern District of Florida returned 16 separate superseding indictments, charging individual distributors of adult materials with conspiracies involving their associates. One of the superseding indictments charged Robert DiBernardo, Theodore Rothstein, and Andrew D'Apice, the defendants in this case, with one count of conspiracy to violate the federal obscenity laws [18 U.S.C.

§ 371], three counts of transporting obscene material in interstate commerce by means of a common carrier [18 U.S.C. § 1462], and three counts of transporting obscene material in interstate commerce for sale or distribution [18 U.S.C. § 1465].

The trial of DiBernardo, Rothstein, and D'Apice was scheduled to commence on May 18, 1981. On that day, the district court considered various pre-trial motions, including a motion to sever filed by DiBernardo and Rothstein on the ground that they would suffer prejudice from a joint trial because their co-defendant D'Apice was willing to provide exculpatory testimony on their behalf. D'Apice filed an affidavit stating that he would provide such testimony at a separate trial of his co-defendants, but that otherwise, he would invoke his fifth amendment privilege against self-incrimination. In their motion, the defendants proposed that D'Apice be tried as scheduled on May 18, with the trial of DiBernardo and Rothstein to follow.

The district court examined D'Apice under oath with regard to his proposed testimony. D'Apice confirmed that he would supply exculpatory testimony in a trial of Rothstein and DiBernardo alone, but that if tried with the other two defendants, he would invoke his fifth amendment privilege.

The government opposed the motion for severance, claiming that D'Apice's proposed testimony would be perjurious. Accordingly, it refused at the hearing to provide D'Apice with use immunity for his testimony at a separate trial of DiBernardo and Rothstein. However, counsel for the United States indicated that D'Apice's testimony would not be used against him in a subsequent trial. D'Apice stated that he was willing to go forward with his testimony under these conditions.

The district court then granted the motion to sever, relying on two Fifth Circuit decisions in *Byrd v. Wainwright,* 428 F.2d 1017 (5th Cir.1970) and *Tifford v. Wainwright,* 588 F.2d 954 (5th Cir.1979).

---

* Honorable Roger Vinson, U.S. District Judge for the Northern District of Florida, sitting by designation.

(R.710) The court went on to conclude, however, that the defendants had no right to determine the order of trials, and that the trial of DiBernardo and Rothstein would proceed as scheduled. In order to protect the constitutional right of the two defendants to compel D'Apice's testimony, the district court assumed that it could grant the witness "judicial use immunity" to protect his constitutional right against self-incrimination. In so doing, the judge recognized there was doubt whether the then Fifth Circuit recognized judicial use immunity, but followed a Third Circuit decision which approved judicial use immunity. *See Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir.1980).

Thereafter, the trial of DiBernardo and Rothstein began. At the close of the government's case-in-chief, the defendants began presenting their case. D'Apice was called as a witness out of the presence of the jury, and both defendants indicated that they wanted to elicit from him answers to questions only within the scope of his affidavit. The court indicated that it intended to provide the defendants their sixth amendment right to elicit such testimony from the witness.

Counsel for D'Apice then informed the judge that his client would invoke the privilege against self-incrimination as to all matters upon which he would be questioned during this trial. Counsel explained that, in his opinion, the court had no authority to grant judicial use immunity, and, therefore, his client was not adequately protected from future use of his testimony against him. The Court questioned D'Apice, and D'Apice confirmed that he would invoke his privilege against self-incrimination as to all matters at the trial. Finding that the witness' fifth amendment concerns "are not even possibilities," given the court's prior rulings, the trial judge held D'Apice in contempt and sentenced him to 180 days imprisonment, unless he purged himself during trial. The defendants continued presentation of their case without D'Apice, but expressly noted that the continuation did not represent a waiver of "any right of our need for Mr. D'Apice's testimony." (R. 2448) D'Apice filed a notice of appeal of his contempt citation, and the trial was completed without his testimony.

At the close of all the evidence, the defendants renewed their Rule 29 motions, and all previous motions and objections. (R. 2922) These motions were denied, and the case was submitted to the jury. After three days of deliberations, the jury returned guilty verdicts on all seven counts against both defendants on June 12, 1981. (R. 3457–58) The court proceeded to adjudicate both defendants guilty, and granted the defendants thirty days in which to file post-trial motions. (R. 3460) Two further extensions were granted, giving the defendants until August 21, 1981, to file their motions.

On August 14, 1981, the defendants filed motions requesting, *inter alia*, a new trial pursuant to Rule 33. The motion for new trial was made "for reasons heretofore advanced at the trial." (Doc. 1137) The record does not reveal the grounds more specifically.

The defendants were sentenced by the trial court on December 7, 1981, and both defendants filed notices of appeal the same day. On December 11, their Rule 33 motion was denied. This order is not in the record.

Three days later, on December 14, this Court reversed the adjudication of contempt against D'Apice, holding that his refusal to testify was a valid exercise of his fifth amendment privilege. *United States v. D'Apice*, 664 F.2d 75 (5th Cir. Unit B 1981). In that opinion, we expressly rejected the concept of "judicial use immunity," declined to follow the Third Circuit's decision in *Government of Virgin Islands v. Smith, supra*, and noted that the granting of immunity was strictly an executive branch function. *United States v. D'Apice, supra*, 664 F.2d at 77.

Another major development in this case followed soon thereafter. On January 21, 1982, the government informed the district court of a problem which had developed with respect to Special Agent Livingston. Livingston had been arrested for shoplift-

21

1

ing in November 1981, and had given his "Miporn" alias to the police. The government indicated that Livingston had psychiatric problems involving an inability to distinguish between his real and undercover identities. Upon further investigation, it was revealed that concerns for the mental health of Livingston had been voiced by his superiors as early as March 1980. Livingston had been a principal witness before the Miporn grand jury and at several Miporn trials, including that of DiBernardo and Rothstein.

On February 12, 1982, a letter was sent to counsel of all defendants involved in the Miporn indictments, detailing the Livingston problem. In an order entered March 8, the district court directed all defendants to file appropriate motions with respect to this matter within 20 days. In June 1982, DiBernardo and Rothstein filed a motion denominated a "motion for new trial." (Doc. 1463) In it, they raised numerous grounds including: Livingston's testimony required re-examination of the admission of co-conspirator hearsay statements; failure to disclose Livingston's psychological problems constituted a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); the indictment should be dismissed for use of Livingston's testimony before the grand jury; and the indictment should be dismissed for prosecutorial misconduct.

In June and September of 1982, the district judge conducted thirteen days of evidentiary hearings on the Livingston matter. On December 20, 1982, the district court entered an order dismissing the pending Miporn indictments based on tainted grand jury testimony and prosecutorial misconduct. *United States v. DiBernardo*, 552 F.Supp. 1315 (S.D.Fla.1982); *see also United States v. DiBernardo*, 561 F.Supp. 783 (S.D.Fla.1983) (denying motion to reconsider). The court entered an order to show cause on December 28, 1982, why the indictments of DiBernardo and Rothstein should not be dismissed and their convictions vacated. (Doc. 1436)

Meanwhile, the defendants' appeal had been stayed by this court, pending resolution of the Livingston matter. On May 23, 1983, the case was remanded on the district judge's request. On June 27, 1983, the district court entered an order vacating the convictions of DiBernardo and Rothstein and dismissing the indictment without prejudice, pursuant to its order of December 20, 1982. (Doc. 1524) The district court concluded the order with the following observation regarding a new trial for these defendants:

The court also notes that at the trial of these defendants there was a significant inability on the part of the government to collaborate [sic] certain key statements which Livingston claimed these defendants made. Therefore, if for some reason this Court's decision with regard to dismissing the indictment of these defendants is reversed, there is no question in this Court's mind that the defendants DI BERNARDO and ROTHSTEIN would be entitled to a new trial.

(Doc. 1524) (footnote omitted)

The government thereafter appealed the order dismissing the indictments.

On December 5, 1985, this court reversed the order dismissing the indictment. *United States v. DiBernardo*, 775 F.2d 1470 (11th Cir.1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 357 (1986). We found that neither ground of the district court's order was an appropriate basis for the exercise of its supervisory power over the administration of justice within the district. We also noted that the trial judge had not yet ruled on the alternative motion for a new trial. *Id.* at 1474 n. 7. The case was remanded for further proceedings not inconsistent with our opinion. *Id.* at 1478.

On December 9, 1985, the district court directed the parties to file memoranda indicating what action the court should take. Further proceedings, however, were postponed pending action by the Supreme Court of the United States on the defendants' petition for certiorari. The Supreme Court denied certiorari on May 5, 1986, and a status conference was then scheduled on July 1 in the district court.

Another significant development occurred before the status conference. On or

about June 5, 1986, defendant DiBernardo disappeared and has been missing ever since. The government moved on July 24, 1986, for an order requiring the two defendants to commence serving their sentences. Rothstein renewed his motion for a new trial on August 29, 1986. In this motion, the defendant set forth three grounds for the granting of a new trial: (1) Livingston's trial testimony was perjurious; (2) Livingston's psychological history was undisclosed *Brady* material; and (3) D'Apice, having pled guilty and been sentenced in 1984, was now available to testify at a new trial. (Doc. 1694)

The district judge, who had presided over these proceedings throughout this case, heard oral argument on the motion on September 19, 1986. At that time, he indicated that he was tentatively inclined to deny the motion on the Livingston grounds, but was inclined to grant the motion to allow D'Apice to testify.[1] (Vol. 9, Supp.R. 60–61) The court did not rule at the hearing, but required the defendant to file a "comprehensive statement by way of affidavit what Mr. D'Apice will in fact testify to on behalf of Mr. Rothstein." (*Id.* 61) The affidavit was duly filed on October 15. (Doc. 1702) The parties briefed the issue following the filing of the affidavit, with the government still opposed to a new trial based on the testimony of D'Apice. (Docs. 1703–1704)

On April 9, 1987, 657 F.Supp. 500, the district judge entered an order granting a new trial to both DiBernardo and Rothstein, based on the D'Apice matter. In essence, the court recognized that it had erred when it granted the motion to sever D'Apice, while compelling DiBernardo and Rothstein to stand trial first:

> The granting of the motion to sever D'Apice gave them a partial victory; to then deprive them of D'Apice's testimony by forcing them to trial before D'Apice was relieved of his Fifth Amendment privilege was clearly error.
>
> (Doc. 1724, at 3)

The court disavowed that it was ruling on a newly discovered evidence motion. *See* Rule 33, Fed.R.Crim.P. Rather, it stated: "We are dealing with a remand from the Court of Appeals directing this Court to consider whether or not a new trial should be granted." (*Id.*) The court stated that its course of action which precluded the use of D'Apice's testimony was "clearly erroneous." It further found that D'Apice's testimony would have been "material and could very well have resulted in a different verdict on behalf of both Defendants." (*Id.* at 4) Accordingly, it granted the motion for a new trial for both appellees.

The government has taken an appeal from the order of the district court granting the new trial. It argues, first, that the district court abused its discretion in granting the motion for a new trial based on the D'Apice matter, and second, that the court was without jurisdiction to grant DiBernardo a new trial. This Court has jurisdiction pursuant to Title 18, *United States Code*, Section 3731.

## II. Discussion

### A. *New Trial*

One of the complications affecting our review of the new trial order is determining which motion for a new trial may have been available for consideration, and ruled on, by the trial court. Disregarding the trial motions, which were timely denied by the trial court, there are clearly three post-trial motions for a new trial made by one or both of these defendants. The first was filed by both defendants on August 14, 1981, and denied by the trial court on December 11, 1981, four days after the defendants filed their first appeal. The second motion was filed by both defendants in June 1982, based on the Livingston matter. It was not ruled on, since the trial court dismissed the indictment instead, but of which the trial court indicated there was "no question in this Court's mind" that

---

1. At the September 19, 1986, hearing on the new trial motions, the trial judge indicated that the statements in the order dismissing the indictments about the uncorroborated evidence at trial were meant to apply only to DiBernardo, and not to Rothstein. (Vol. 9, Supp.R. 9–10) However, the judge also found that the D'Apice testimony would be material to the cases against both defendants. We agree.

DiBernardo and Rothstein were entitled to a new trial. This was the alternative motion acknowledged as still pending in footnote 7 of our order reversing and remanding the dismissal of the indictment. Finally, there is the renewal of the motion for a new trial filed only by Rothstein on August 29, 1986. It asserts two "Livingston" grounds and one "D'Apice" ground. The order on appeal granted a new trial on the D'Apice ground.

We begin our analysis by noting that the trial court's prior dismissal of the indictment and the alternative motion for a new trial recognized by us as still pending on remand were based on the Livingston matter, and not on the D'Apice matter. On the other hand, the trial court made it very clear that the new trial order involved in this appeal is based only on the D'Apice matter. The United States argues that it was an abuse of discretion for the trial court to grant a new trial under Rule 33 based on the proposed testimony of D'Apice. Rule 33 authorizes the granting of a new trial on motion of a defendant under two circumstances.[2] First, a new trial may be granted "in the interest of justice" on any ground if the motion is filed within seven days of the verdict or finding of guilty. Second, newly-discovered evidence may form the basis for a new trial motion if the motion is filed within two years of the entry of judgment. The government argues in this case that the district court was without jurisdiction to grant a new trial "in the interest of justice" and that D'Apice's newly-available testimony does not constitute newly-discovered evidence. With both these contentions, we must agree.

The time limits of Rule 33 are jurisdictional. *See, e.g., United States v. Hall,* 854 F.2d 1269, 1271 (11th Cir.1988); *United States v. Brown,* 587 F.2d 187, 189 (5th Cir.1979). Thus, a district court is without jurisdiction to grant a new trial using the "in the interest of justice" standard unless the motion is filed within seven days after return of the guilty verdict or within any extension of that time period granted by the trial judge within the seven-day period. *See, e.g., United States v. Beasley,* 582 F.2d 337, 339 (5th Cir.1978); *United States v. Coleman,* 811 F.2d 804, 806–07 (3d Cir. 1987); *United States v. Dukes,* 727 F.2d 34, 38 (2d Cir.1984); *United States v. Hazeem,* 679 F.2d 770, 774 (9th Cir.), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982); *United States v. Fontanez,* 628 F.2d 687, 691 (1st Cir.1980), *cert. denied,* 450 U.S. 935, 101 S.Ct. 1401, 67 L.Ed.2d 371 (1981).

The motion for a new trial filed in June 1983, and its "renewal" with the D'Apice matter filed in August 1986, were both filed outside the seven-day period for application of the "in the interest of justice" standard under Rule 33. Therefore, it would have been an abuse of the trial court's discretion to grant the motion sub judice "in the interest of justice," unless these two motions can be brought within the time limitations of Rule 33.

Only one Rule 33 motion was filed within the rule's time limitations of seven days to which the "interest of justice" standard would have applied. After the jury verdicts were returned against the defendants on June 12, 1981, the trial judge granted their request for extensions of time within which to file their post-trial

2. Rule 33 provides in toto:

The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

By restricting the court's actions to "on motion of a defendant," Rule 33 precludes "[p]roblems of double jeopardy aris[ing] when the court acts on its own motion." Rule 33 advisory committee notes, Fed.R.Crim.P.; *see United States v. Smith,* 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947).

motions. *See* Rule 33, Fed.R.Crim.P. These motions were eventually filed on August 14, 1981, and denied on December 14, 1981. Because the defendants had already filed their appeals, there is an initial question of whether the denial was jurisdictionally proper. *See* Rule 4, Fed.R.App.P. Although the district court denied their Rule 33 motion four days after the appellees filed their notices of appeal, it had jurisdiction to consider them and to issue a denial.[3] *See United States v. Cronic*, 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, 2051 n. 42, 80 L.Ed.2d 657 (1984); *United States v. Sjeklocha*, 843 F.2d 485, 487 (11th Cir.1988). Therefore, the first motion for a new trial was properly acted upon and denied.

The finality of the denial of this motion is also placed in issue by the fact that we have not yet considered and ruled on the defendants' original appeal. Instead, we remanded the case back to the district court so that it would have jurisdiction to consider and rule on the Livingston matter. Thus, the underlying appeal is still viable and could be pursued by the defendants if the new trial motions are denied. Rule 33 does not appear to contemplate a procedural situation such as this. Nevertheless, we must conclude that first motion had been finally denied and was not viable when the district court considered a new trial in 1987. Nor were the other motions within the time allowed for "an interest of justice" new trial motion. Therefore, it was improper for the district court to grant a new trial on that basis.

■ Assuming that any one of the three motions for a new trial was a timely-filed "newly discovered evidence" motion under Rule 33, it would also have been an abuse of the trial court's discretion to grant the motion based on the D'Apice matter. It is well-settled that in order to be entitled to a new trial under Rule 33 based on newly-dis-covered evidence, the defendant must demonstrate that the evidence satisfies the following five-part test:

> (1) the evidence must be discovered following trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to issues before the court; and (5) the evidence must be of such a nature that a new trial would probably produce a new result. *United States v. Hall, supra*, 854 F.2d at 1271.

*See also United States v. Hobson*, 825 F.2d 364, 366 (11th Cir.1987). Newly-available, exculpatory testimony of a co-defendant is not considered newly discovered evidence sufficient to grant a Rule 33 motion unless it satisfies this same five-part test. *See, e.g., United States v. Metz*, 652 F.2d 478 (5th Cir.1981); *United States v. Martino*, 648 F.2d 367, 406–07 (5th Cir.1981), *cert. denied*, 456 U.S. 943 & 949, 102 S.Ct. 2006–07 & 2020, 72 L.Ed.2d 465 & 474 (1982); *United States v. Alejandro*, 527 F.2d 423 (5th Cir.), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2632, 49 L.Ed.2d 377 (1976) and 429 U.S. 844, 97 S.Ct. 124, 50 L.Ed.2d 115 (1976); *United States v. Simmons*, 714 F.2d 29 (5th Cir.1983); *United States v. Diggs*, 649 F.2d 731, 739–40 (9th Cir.), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981); *United States v. Rocco*, 587 F.2d 144 (3d Cir.1978), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *United States v. Barlow*, 693 F.2d 954, 965–66 (6th Cir.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983).

Here, both Rothstein and DiBernardo were well aware of D'Apice's proposed testimony prior to trial. Therefore, the testimony cannot be deemed "newly discovered evidence" within the meaning of Rule 33.

---

**3.** The initial new trial motion was filed after the 30–day extension granted to the appellees on return of the verdicts, but within the time limits of subsequent extensions granted by the trial court. Under similar circumstances, the Seventh Circuit has held that the Rule 33 motion was untimely after the initial extension, and the district court was without jurisdiction to consider it. *See United States v. Hocking*, 841 F.2d 735, 737 (7th Cir.1988). It would appear that the trial court is in the best position to consider the need for the extension, and to perhaps continue an extension if done before it expires. The rule seems to contemplate unlimited discretion in the trial judge, since no outside time limitation is fixed for the extension. We need not decide the point, however, since it would not affect the result we reach.

*See United States v. Metz, supra,* 652 F.2d at 480.

Both appellees rely on *Ledet v. United States,* 297 F.2d 737 (5th Cir.1962), and *Newsom v. United States,* 311 F.2d 74 (5th Cir.1962), for the proposition that newly available testimony can satisfy the newly discovered evidence test. In both *Ledet* and *Newsom,* motions for new trials were granted which raised a co-defendant's exculpatory testimony as newly discovered evidence. Although this Court affirmed both orders, our opinions make clear that the newly available testimony was not the sole ground for the decisions. Furthermore, in *United States v. Metz, supra,* we limited *Ledet* and *Newsom* to their facts and rejected the idea that newly available evidence is synonymous with newly discovered evidence on a Rule 33 motion. *United States v. Metz, supra,* 652 F.2d at 480–81. Thus, the "D'Apice matter" must be characterized as newly available testimony and is not "newly discovered" evidence for purposes of Rule 33.

Of course, if Rule 33 authorized the trial judge to order a new trial based on the D'Apice matter, we would be compelled to affirm the order without further comment. However, as pointed out above, neither standard of Rule 33 permitted the district court to exercise its discretion by granting a new trial based on the D'Apice testimony. The district judge recognized this as well. The "Livingston matter" was the only subject of the order dismissing the indictment on June 27, 1983. The pending, unruled on, motion for new trial that was identified by this Court for further consideration upon remand was related to only the "Livingston matter." As we've discussed above, the district court expressly disavowed the newly discovered evidence standard in the order granting a new trial which is before us. The judge apparently granted the new trial to correct what he perceived to be his own error in ruling on the motion for severance in May 1981. Thus, the underlying question in this case is whether the district court had the authority beyond Rule 33 to grant the new trial motion based on the D'Apice matter.

 An order of remand by an appellate court cannot enlarge the authority of a district court beyond the rules of criminal procedure. *See United States v. Smith,* 331 U.S. 469, 471, 67 S.Ct. 1330, 1331, 91 L.Ed. 1610 (1947); *United States v. Cannon,* 807 F.2d 1528 (11th Cir.1986). In the order granting a new trial, the district judge disavowed reliance upon the only available Rule 33 standard and stated that he was reviewing the motion under a mandate from this Court. Our opinion reversing the district court's previous order dismissing the indictments cannot be read to authorize the grant of a new trial sua sponte. We simply noted that an alternative motion for new trial was pending before the district court, and we remanded for action not inconsistent with our opinion. Nevertheless, the court's authority to order a new trial must arise from the grant of powers to the district court and not from our mandate.[4]

---

**4.** The rules of criminal procedure, of course, do not demarcate the outer limits of a trial court's authority to vacate a judgment of conviction. Under its inherent supervisory power, a district court may consider an untimely post-trial motion for judgment of acquittal or may grant such a motion sua sponte to correct manifest error when it retains jurisdiction over the case. *See United States v. Coleman,* 811 F.2d 804, 806–07 (3d Cir.1987); *Arizona v. Manypenny,* 672 F.2d 761, 764–65 (9th Cir.), *cert. denied,* 459 U.S. 850, 103 S.Ct. 111, 74 L.Ed.2d 98 (1982); *United States v. Doherty,* 675 F.Supp. 726, 729 (D.Mass.1987); *United States v. Broadus,* 664 F.Supp. 592, 595–98 (D.D.C.1987). The rules must be applied flexibly "to provide for the just determination" of every case and must be construed "to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." Rule 2, Fed. R.Crim.P.; *see Fallen v. United States,* 378 U.S. 139, 142, 84 S.Ct. 1689, 1691, 12 L.Ed.2d 760 (1964); *United States v. Mendoza,* 565 F.2d 1285, 1288–90 (5th Cir.1978). Thus, if a district court has jurisdiction over a case, then the interests of justice demand that it review the sufficiency of the evidence for conviction without regard to the technicalities of pleading. *See Ansley v. United States,* 135 F.2d 207, 208 (5th Cir.1943).

Nevertheless, in *United States v. Smith, supra,* the Supreme Court expressed disapproval of a district court acting on Rule 33 motions beyond the time limits stated in the rule. 331 U.S. at 474–76, 67 S.Ct. at 1333–34. The Court pointed out that the rule provides for sufficient extensions of time within which the motion can be

■ It is clear to us that the trial judge was firmly convinced that a new trial was necessary, and we cannot disagree with that conclusion. It has been recognized in similar situations that the district court had the authority to consider Rothstein's motion for new trial based on the D'Apice matter under Title 28, *United States Code,* Section 2255. *See United States v. McIntosh,* 566 F.2d 949, 951 (5th Cir.1978); *United States v. Schmidt,* 760 F.2d 828, 834 n. 9 (7th Cir.), *cert. denied,* 474 U.S. 827, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985); *United States v. Holy Bear,* 624 F.2d 853, 856 (8th Cir.1980); *United States v. Brown,* 413 F.2d 878, 879 (9th Cir.1969), *cert. denied,* 397 U.S. 947, 90 S.Ct. 965, 25 L.Ed.2d 127 (1970).[5] The fact that the motion was denominated a motion for new trial under Rule 33 does not preclude consideration of the motion as a petition for relief under the federal habeas corpus statute. *See* 8A *Moore's Federal Practice* ¶ 33.02[3][a] (1988). We must, however, determine whether the motion is properly before us under Section 2255.

■ Section 2255 allows a person "in custody" under sentence of a United States district court to file a petition to vacate or set aside the sentence, if the underlying basis for the sentence was obtained, inter alia, in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *see Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); 3 C. Wright, *Federal Practice & Procedure* § 593 (2d ed. 1982). In this case, the appellees had been convicted and sentenced to terms of imprisonment prior to the procedural complexities which commenced in 1982. As of that time, they were clearly "in custody" within the meaning of Section 2255. *See Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); *Simmons v. United States,* 437 F.2d 156, 158 (5th Cir.1971); *United States v. Correa-de Jesus,* 708 F.2d 1283, 1285 (7th Cir.1983). The convictions were vacated in an order subsequently reversed by this Court. It appears from the record that these convictions have never been reinstated by the district court. However, by the time Rothstein filed his renewed "Rule 33 motion" raising the D'Apice matter, the government had filed a motion to require the defendants to surrender for execution of sentence. While there may be some question about whether the convictions are of record, we find that the imminence of imprisonment for the sentences received is sufficient to satisfy the custody requirement of Section 2255.

■ Furthermore, a motion to sever based on the need for the exculpatory testimony of a co-defendant implicates the constitutional rights of the movant. *See United States v. Pepe,* 747 F.2d 632, 650–51 (11th Cir.1984); *Tifford v. Wainwright,* 588 F.2d 954 (5th Cir.1979). In the seminal case on this issue, our predecessor Court affirmed the grant of a petition for habeas relief from a state court judgment because the trial court's denial of the petitioner's motion to sever constituted a denial of due process. *Byrd v. Wainwright,* 428 F.2d 1017 (5th Cir.1970). Thus, the ground for the new trial order below would properly be raised in a Section 2255 petition.

---

made and considered and that the time limit on the "in the interest of justice" standard has a purpose within the administration of justice. 331 U.S. at 475–76, 67 S.Ct. at 1333–34. "It is in the interest of justice that a decision on the propriety of a trial be reached as soon after it has ended as possible, and that decision be not deferred until the trial's story has taken on the uncertainty and dimness of things long past." 331 U.S. at 476, 67 S.Ct. at 1334.

5. In each of the four cases cited above, the district courts were presented with post-trial motions which were inappropriate under the rule identified by the defendant. In *Schmidt,* the defendant filed an untimely motion under Rule 33, claiming that he involuntarily waived several constitutional rights when he submitted the case to trial on stipulations. In *Holy Bear,* the defendant alleged ineffective assistance of counsel in an untimely Rule 33 motion. In both cases, the appellate courts found that the trial court had jurisdiction to consider the merits of the claims under Section 2255. Similarly, in *Brown,* the defendant filed a Rule 35 motion raising issues not cognizable under that rule, and in *McIntosh,* the defendant filed an untimely motion under Rule 35 raising a claim that his guilty plea was involuntary. In these cases, the appellate courts also found that the requested relief could be considered under Section 2255.

As in *United States v. Schmidt* and *United States v. Holy Bear, supra,* the appellee Rothstein raised a constitutional claim of error in an untimely Rule 33 motion for a new trial. This ground for vacating his conviction could have been raised in a petition under Section 2255. Such a petition may be filed "at any time." 28 U.S.C. § 2255. Of course, a petitioner for relief may not ignore the procedural requirements of Section 2255. However, where there is no bar to the petition, the district court has jurisdiction to consider the claim and grant relief, if appropriate, under Section 2255.

The government has also advanced the argument that the appellees did not object to the trial court's ruling on the order of trials, although it concedes that the appellees could raise on direct appeal the thwarted presentation of D'Apice's testimony. Of course, the D'Apice matter has not been considered on direct appeal because the appellees' initial appeal was remanded on request of the district court, and since that time, the convictions have been vacated, the indictment dismissed, and the new trial motion held pending under an indication that it would be granted.

■ Failure to make timely objections to trial errors, failure to raise errors on direct appeal, and failure to take an appeal may be raised as bars to collateral relief. *See, e.g., United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Boschen v. United States,* 845 F.2d 921, 922 (11th Cir.1988); *Edwards v. United States,* 795 F.2d 958 (11th Cir.1986); *cert. denied,* 481 U.S. 1019, 107 S.Ct. 1899, 95 L.Ed.2d 506 (1987). *But see United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir. 1984) (constitutional claims may be raised on collateral review even if not raised on appeal), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985).

■ As to the failure to object, we note that the appellees requested that D'Apice

be tried first in their motion for severance, and that this is the general practice under these circumstances. If they did not then object to the judge's ruling, that is understandable—the judge had granted D'Apice immunity, and D'Apice had indicated his willingness to testify. Furthermore, when D'Apice asserted his privilege at trial, the appellees continued their defenses and expressly stated that they did so without waiving their contention that they needed the testimony of their co-defendant. We find that these actions sufficiently preserved the objection to the order of trials.[6]

Having determined that the district court had jurisdiction to consider Rothstein's request for a new trial based on the D'Apice matter, we now consider whether the court abused its discretion in granting a new trial on that ground.

■ In considering the new trial motion in 1987, the district court was presented with an unusual situation. It had granted the pre-trial motion to sever in 1981, finding that the defendants had satisfied their burden under *Byrd v. Wainwright.* However, its decision to try Rothstein and DiBernardo prior to D'Apice constituted a de facto denial of the motion to sever; that is, severance had been granted so that D'Apice could testify at the trial of Rothstein and DiBernardo, but the court's ruling on the order of trials negated that possibility. After the court had fashioned its "judicial use immunity" for D'Apice, neither the defendants nor the witness had reason to believe that their sixth and fifth amendment rights, respectively, had not been protected. The error of the trial court was not made manifest until after the defendants had been convicted and sentenced, at a time when D'Apice was still unavailable as a witness. The proceedings involving the dismissal of the indictment made irrelevant the need for D'Apice's testimony. Thus, the district court in 1987 was presented with a motion based on a denial of the motion to sever when the

---

**6.** With respect to the propriety of a Section 2255 petition, we note that this case does not present a situation where the appellees have waived their right to appeal their convictions prior to filing the motion at issue nor where they have

defaulted on taking an appeal under the prescribed procedure. The district court initially invited renewed trial motions and kept such motions active after remand of the government's prior appeal.

court itself had determined that severance was constitutionally mandated.

The procedural complexities of the case have presented this Court with an equally unusual situation. The government has appealed what appeared to be the grant of a motion for new trial which we have sua sponte denominated a petition for habeas corpus relief, and the basis for the defendant's underlying request for a new trial was the district court's order granting the defendant's motion for severance. Despite the complexities, the government has maintained throughout these proceedings that severance was not proper under *Byrd v. Wainwright*, and that, if severed, the appellees had no right to be tried after D'Apice. Noting that both severance and the order of trials for co-defendants are committed to the discretion of the trial court, we examine both contentions of the government. *See Byrd v. Wainwright, supra.*

■ In regard to the motion to sever, we find that the district court did not abuse its discretion in granting the motion in 1981 based upon D'Apice's proposed testimony. In order to succeed on such a motion, the movant must demonstrate: (1) a bona fide need for the co-defendant's testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) the likelihood that the co-defendant will in fact testify if the cases are severed. *United States v. DeSimone*, 660 F.2d 532, 539 (5th Cir. Unit B 1981); *see Byrd v. Wainwright, supra*, 428 F.2d at 1019–18. The affidavits submitted with the 1981 motion and D'Apice's sworn statements at the pre-trial hearing demonstrated the substance of his testimony, its exculpatory nature and effect, and his willingness to testify. The substance of the testimony was that DiBernardo and Rothstein were not involved in a conspiracy with him and that they had no knowledge of the arrangements for shipments of allegedly obscene materials by common carrier in interstate commerce as charged in Counts II, IV, and VI of the superseding indictment.[7] Obviously, such evidence was peculiarly within the knowl-

edge of the three co-defendants, and, therefore, if it was to be presented at all, it would have to be provided by one of this group.

The government argues that D'Apice's testimony was not needed because DiBernardo and Rothstein could have testified to these matters themselves. We, however, cannot ignore the fifth amendment privilege against self-incrimination. Furthermore, the proposed testimony strongly indicated that D'Apice was the only person involved in certain aspects of the activities charged as criminal. Testimony concerning his knowledge of the events would provide more convincing evidence than protestations of ignorance by DiBernardo and Rothstein.

■ Once the movant has demonstrated the substantive aspects of the proposed testimony, the court must evaluate whether severance is proper, assessing (1) the significance of the testimony in relation to the defenses, (2) the extent of the prejudice caused by the absence of the testimony, (3) the effect of severance on judicial economy and the administration of justice, and (4) the timeliness of the motion. *United States v. DeSimone, supra*, 660 F.2d at 540. An evaluation of these factors in this case indicates that granting the motion to sever was within the trial court's discretion. The motion was timely, and the evidence was significant to the defense. The prejudice arising from the denial of the motion was clear: "[T]he issue of [the defendant's] knowledge of [D'Apice's] criminal activities was central to the crimes charged by the indictment, and [D'Apice's] testimony was essential to rebut the prosecution's proof on this crucial issue." *Tifford v. Wainwright*, 588 F.2d 954, 957 (5th Cir.1979).

While granting the motion to sever necessitated two trials, the teaching of *Byrd v. Wainwright* and its progeny is that judicial economy must yield to a defendant's right to a fair trial. In 1981, the district court determined that due process required severance of DiBernardo and Rothstein.

---

**7.** These assertions would also affect the evidence on Counts III, V, and VII, dealing with

the interstate transportation of obscene matters for distribution or sale.

We agree with that assessment; the motion to sever was properly granted.

■■■ As to the order of trials, we agree with the district court's 1981 statement that among severed co-defendants, there is no absolute right to be tried in a certain order; each case must be evaluated on its own facts. *See Byrd v. Wainwright, supra,* 428 F.2d at 1022. We also agree with the district court's finding in 1987 that the decision to first try DiBernardo and Rothstein effectively denied the motion for severance. As we found in our opinion reversing his conviction for contempt, D'Apice was not adequately protected either by the court's "judicial use immunity" or the government's informal immunity. *United States v. D'Apice,* 664 F.2d 75, 76–78 (5th Cir. Unit B 1981). Thus, he properly asserted his privilege against self-incrimination at the trial of his co-defendants.

In their 1981 motion, the appellees requested that their co-defendant be tried first, as did the petitioner in *Byrd v. Wainwright.* The record is not clear why the district court decided to try DiBernardo and Rothstein prior to D'Apice. However, that decision was based in part on the erroneous conclusion that "judicial use immunity" was available to protect the witness. Under the facts of this case, we agree with the district court that it erred in trying DiBernardo and Rothstein first in 1981. That error was an abuse of the trial court's discretion, which denied the appellees a fair trial.

■■■ The government has opposed the motion to sever throughout the course of this case based on the contention that D'Apice will commit perjury. As we have noted previously, "[c]redibility is for the jury, but the judge is not required to sever on patent fabrications." *Byrd v. Wainwright, supra,* 428 F.2d at 1021; *see United States v. Alejandro,* 527 F.2d 423, 428 (5th Cir.1976), *cert. denied,* 429 U.S. 844, 97 S.Ct. 124, 50 L.Ed.2d 115 (1977). The district court here was fully aware of the allegations of perjury and the dictates of *Byrd v. Wainwright.* Yet, the court granted the motion to sever so that D'Apice could testify. We also note that the district court has had the opportunity to evaluate D'Apice's proposed testimony not only in 1981, but also in 1986, and in both instances, it has decided that he should be allowed to testify on behalf of his co-defendants. The district judge is clearly familiar with the relevant facts on this issue, and we find no reason to disturb his evaluation.

We find that the district court had the authority to consider Rothstein's motion for a new trial on the D'Apice rationale. Under the circumstances of this case, we find that the motion to sever was properly granted in 1981, but that it was an abuse of the trial court's discretion to require DiBernardo and Rothstein to be tried prior to D'Apice without proper protection for the latter's fifth amendment privilege. As this decision denied the appellees a fair trial in 1981, Rothstein was entitled to relief on a Section 2255 petition. Accordingly, the district court's order granting the new trial as to appellee Rothstein is hereby AFFIRMED.

## B. *Fugitivity of DiBernardo*

The district court ordered a new trial for DiBernardo on the "assumption" that he is not dead. At oral argument on the new trial motion, and again at argument before this Court, DiBernardo's counsel indicated that he believed his client to be dead. Furthermore, if he is not dead, there is substantial evidence that this appellee has voluntarily absented himself from the jurisdiction of the district court as a fugitive.

■■■ In either case, granting this defendant a new trial may not be proper. If DiBernardo is dead, then the motion is moot. *See United States v. Romano,* 755 F.2d 1401 (11th Cir.1985); *United States v. Pauline,* 625 F.2d 684 (5th Cir.1980). If DiBernardo is a fugitive, then the district court does not have jurisdiction to grant his motion for a new trial. *See Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); *United States v. Holmes,* 680 F.2d 1372 (11th Cir.1982); *Broadway v. City of Montgomery,* 530 F.2d 657 (5th Cir.1976).

Accordingly, the order granting a new trial as to DiBernardo is hereby VACATED. This case is REMANDED to the district court for a determination of the status of this defendant, and then, if appropriate, to consider his motion for a new trial consistent with the discussion herein.