**UNITED STATES of America, Appellee,**

v.

**Ronald BURNS, Appellant.**

**No. 88–1699.**

United States Court of Appeals, First Circuit.

Heard Feb. 6, 1990.

Decided March 20, 1990.

·Harry C. Mezer, for appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Jay P. McCloskey, Asst. U.S. Atty., were on brief, for appellee.

Before BREYER, ALDRICH and SELYA, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

Defendant Ronald Burns (Burns) was indicted on nine counts of a fourteen count indictment with a number of others for conspiracy and participation in drug offenses. On his allowed motion, the consequences of which he subsequently sought to undo, defendant was tried separately, to a jury. While, on this·appeal, there are a number of other complaints, we do not consider them, and reverse for solely one reason.

The co-defendants were Wilfred Jay Hart, Jr. (Jay) and Peter Hart (Peter). Jay was regarded as the ring-leader. Burns, who figured minimally in the pretrial investigation, was Jay's sometime assistant and handyman. The principal evidence that was to be offered against him was to come from one Susan Pierce (Susan), who had turned government witness. According to her, Burns had, on one occasion, assisted Jay and her in "reconstructuring" some cocaine that had been over-cut. With his motion for a separate trial, Burns alleged that Jay would testify for him, provided Jay was tried separately, first, but if they were tried together, Jay would claim the Fifth Amendment. This scenario was supported by Jay's affidavit, that included the following.

Mr. Ronald Burns has never voluntarily and knowingly been involved with me or my brother in any alleged narcotics offenses or ventures ... If tried jointly, I will invoke my Fifth (5th) Amendment Right to remain silent under the Constitution of the United States. However, if called as a witness by Mr. Ron Burns at a separate trial, I would testify to the exculpatory contents of this affidavit.[1]

The court allowed the motion. Thereafter Jay distinguished himself as a prime nuisance, criticizing and discharging attorneys, and filing innumerable worthless motions, and otherwise occasioning delay. The court ultimately committed him to an institution in Florida for a thirty-day testing of his competency to stand trial. When this was to start, Burns's separate trial date was about to come due. He filed a motion for continuance, pointing out that the reason for the severance had particularly been to obtain Jay's testimony. Counsel stated in the motion,

While the undersigned is prepared for trial on February 2, 1987, and, indeed, prefers to go forward, we cannot do so at the expense of so crucial a witness as the Co–Defendant, Wilfred Hart (Jay).

In a memorandum opinion, denying the motion, the court said,

The objection to the severance is somewhat unusual in that severance was requested by Burns in the first instance. The Government, which agreed to the exculpatory nature of Hart's proffered testimony in behalf of Burns, also objects to separate trials principally out of concern for the conservation of judicial and prosecutorial resources, and minimization of inconvenience to witnesses.

Then, after noting the present and prospective absence of Jay, it said,

Severance lies within the broad discretion of the trial court, as an aspect of its inherent power and duty to manage its own calendar. *United States v. Gay,* 567 F.2d 916, 919 (9th Cir.) [*cert. denied,* 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978)]. The judicial resources of this court are exceedingly limited and are stretched to the limit.... [A]s presently scheduled, the Burns trial will not have begun until almost 11 months after the latest indictment—the delay being due in considerable part to the filing by co-defendant [Jay] Hart of scores of motions, largely frivolous and dilatory in nature; those motions continue to be filed by Hart. Accordingly, the public interest in, as well as the defendant's right to, a speedy trial warrant adherence to the present trial schedule.

Additionally, it is not at all clear that substantial conservation of judicial resources would result from a joint trial of these defendants before two separate juries. The Hart trial reasonably may be expected to consume far more time than the Burns trial, due to the more limited nature of the evidence against defendant Burns and because Hart has demonstrated a strong propensity for dilatory tactics, including the dismissal of counsel who do not agree with Hart's conception of his legal rights.

By leaving it at that the court failed to deal with some of the considerations we outlined for a severance sought in order to obtain the exculpatory testimony of a co-defendant.

In order to be entitled to a severance on the basis of a codefendant's testimony the movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the codefendant will in fact testify if the cases are severed. Given such a showing, the court should (1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) consider whether the testimony would be subject to substantial, damaging impeachment; (3) assess the counter arguments of judicial economy; and (4) give weight to the timeliness of the motion.

---

**1.** The government complains that this is merely a statement of opinion, and does not refute Burns's alleged participation in the cook-out, but, surely, though a generalization, it is sufficiently factual to cover the reconstruction operation described to us.

*United States v. Drougas,* 748 F.2d 8, 19 (1st Cir.1984) (citations omitted). We believe defendant met all his initial requirements. The government's contention that Burns had "no *bona fide* need for Jay Hart's testimony.... With Peter available, there was no need for Jay;" having in mind that on Susan's testimony it was Jay who conducted the all-important reconstruction at which Burns allegedly assisted, and Peter was not present, is not worthy. *Cf. United States v. DiBernardo,* 880 F.2d 1216, 1228 (11th Cir.1989). We venture the government is hard pressed to be willing to make such an argument.

As to Burns's other requirements, Jay's affidavit, ante, met them, too. It is true that at the motion hearing, at which Jay testified, the court speculated whether he might keep his affidavit's undertaking to testify, but it made no reference to this in its memorandum opinion. The government's assertion that this passing speculation was a "finding of fact [that] was clearly correct" is quite unwarranted.

As to the court's necessary four tests, (1), Jay was his only witness who could corroborate his not being at the government's sole episode that implicated him. As to (2), possible impeachment, this must mean something exceptional. If the mere fact that Jay may have been guilty, too, means he would be of no value, how is it that the government uses admittedly guilty co-defendants every day? It cannot be that guilty witnesses are useful—even vital—for the government, but not for the defendant. Nor should (3), judicial economy, stand alone. As to (4), timeliness, this was immediately on defendant's learning the court had changed the scheduling.

While, of course, a court can change its mind, it had originally thought Burns's request well taken. Its concern now seems to focus on defendant's, and the public's, interest in a speedy trial. Defendant, of course, was vigorously seeking to waive a speedy trial. We cannot, in the circumstances, attach overriding importance to the public's interest. There was no suggestion of any loss of witnesses.

We recognize the broad discretion of the district court, and while we regret to overrule it, where defendant has been deprived of his only witness we consider we must do so. It would seem difficult to think of anything more fundamental.

*The verdict and judgment is set aside, and a new trial ordered.*