|2DALEY, Judge.
Defendant, Anthony Adamo, appeals his conviction of armed robbery and attempted second degree murder. On appeal, he assigns as error the trial court’s refusal to try his co-defendant first, so that his co-defendant could offer exculpatory evidence at Ada-mo’s trial. We affirm.
On June 20, 1995, the Jefferson Parish District Attorney filed a four-count Bill of Information against defendant, Anthony Ada-mo, and co-defendant, James Godwin. In count one, the state charged both Adamo and Godwin with attempted armed robbery. (LSA-R.S. 14:27, 14:64). In count two, the state charged Adamo only with attempted first degree murder (LSA-R.S. 14:27, 14:30). In counts three and four, the state charged Godwin with attempted first degree murder and armed robbery. (LSA-R.S. 14:27,14:30, 14:64). Adamo was arraigned on July 28, 1995, and pled not guilty.
On July 17, 1995, Adamo filed a Motion to Appoint a Sanity Commission. The trial court granted defendant’s motion on September 23, 1995. After a lunacy shearing on November 16, 1995, the trial court found Adamo competent to stand trial. On October 9, 1996, the trial court severed the defendants on the state’s motion. On the same day, Adamo filed a Motion to Require the State to Try His Co-defendant First. The trial court denied defendant’s motion. Defendant applied for supervisory writs from the trial court’s decision. This Court denied writs on October 16,1996.
The state amended count two of the Bill of Information on October 9, 1996, reducing the charge to attempted second degree murder. LSA-R.S. 14:27:, 14:30.1. Adamo was tried on counts one and two by a jury of twelve on October 16 and 17,1996. On October 17, the jury found Adamo guilty as charged on both counts. On October 31, 1996, the trial court sentenced defendant on count one to thirty years at hard labor without benefit of parole. On count two, the court sentenced defendant to twenty-five years at hard labor without benefit of parole. The court directed that the sentences were to run concurrently, and that defendant was to be given credit for *2 time served. Defendant lodged an oral objection to the sentence and an oral motion for appeal. Defendant filed a written Motion for Appeal on November 7, 1996. The trial court granted the motion the same day.
The state filed an habitual offender Bill of Information on November 15, 1996, alleging defendant to be a second felony offender. A multiple bill hearing was held on November 21, 1996, and the trial court found Adamo to be a second felony offender. On the same day, the court set aside defendant’s original thirty-year sentence on count one, and resen-tenced defendant to thirty years under the multiple bill, without benefit of parole. The court gave defendant credit for time served, and ordered that the enhanced sentence be served concurrently with the sentence in count two.

J¿FACTS

At 1:00 a.m. on May 2, 1995, Skip Daugh-try, an off-duty New Orleans police officer, made a call on a pay telephone outside a Time Saver convenience store on Metairie Road near the Orleans Parish line. At the same time, law student, Vallie Schwartz, arrived at the store on her way home from a nearby friend’s house. As Ms. Schwartz drove into the store’s parking lot, she noticed loud music coming from a black truck. She saw a man (James Godwin) sitting inside the truck, and defendant, Anthony Adamo, standing outside it. Ms. Schwartz parked her ear in front of the store’s entrance. Prompted by the suspicious demeanor of Adamo and Godwin, she placed her Walther semiautomatic handgun in the waistband of her pants. Schwartz approached Daughtry, who was a friend of hers, and began conversing with him.
Defendant approached Schwartz from behind, and pulled a revolver from his waistband. Daughtry, who was facing defendant, identified himself as a police officer and took Schwartz’s gun from her waistband. Defendant pointed his gun at Daughtry and Schwartz, and fired. Daughtry attempted to return fire, but the safety on Schwartz’s gun was engaged. Defendant turned and ran toward Metairie Road in the direction of Interstate-10 while continuing to fire at Schwartz and Daughtry. Daughtry ran after defendant, firing several rounds at him. No one was injured in the exchange of gunfire, and defendant fled the scene.
Adamo’s companion, who was still in the truck, drove toward Daughtry in an apparent attempt to hit him. Daughtry moved out of the truck’s path, and as the vehicle passed, Godwin fired two shots at him. Godwin then maneuvered the truck across the street, through a fence, and into a building.
Captain Craig Adams of the Jefferson Parish Sheriffs Office was on patrol in the area at the time of the incident. He was in a police car across the street from the |5Time Saver when he saw the black truck enter the store’s parking lot.. He testified that the black truck caught his attention, because it matched the description of a truck involved in some earlier armed robberies. When Adams saw defendant pull his gun, he attempted to drive into the Time Saver parking lot to intervene. However, Godwin blocked Adams’ car with his truck. Adams testified that Godwin pointed a gun out of the truck’s window, and Adams fired three rounds into the truck in response. Godwin was not hit. Sergeant Michael Cimino of the New Orleans Police Department testified that he and several other officers helped to cordon off the area around the Time Saver. Cimino apprehended defendant one and one-half blocks from the store, and placed him under arrest: Defendant was turned over to Jefferson Parish authorities.
At trial, the state offered the Prieur testimony of Ronald Duplessis. Duplessis stated that he and another man were at a bus stop at the comer of Canal and North Carrollton streets in New Orleans at about 1:00 a.m. on May 2, when defendant and his companion drove up in a black GMC truck. Defendant got out of the truck, pointed a gun at the men, and ordered them to hand over their wallets. Duplessis gave defendant his wallet and some money. The other man gave defendant a coin purse. Duplessis’ wallet was never recovered, but Sgt. Cimino found the other man’s coin purse in defendant’s pocket during a search incident to arrest. Adams, Duplessis, and Daughtry all testified that they identified defendant at the scene of his capture.
*3 I (ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in denying the defense motion to try the co-defendant first.
By this assignment, defendant contends that his constitutional right to present a defense was compromised when the trial court denied his motion to try co-defendant James Godwin first. The record shows that defendant filed a Motion to Sever Parties on June 24, 1996, based upon his claim that he and Godwin would have antagonistic defenses. It does not appear that the court ever addressed defendant’s motion. However, the trial court severed the parties on October 9, 1996 at the behest of the state. On the same day, Adamo filed a Motion to Require State to Bring Co-defendant to Trial First. In both his written motion and his argument to the court, Adamo asserted that he intended to call Godwin as a witness at his trial, and that Godwin would testify as to Adamo’s intoxication at the time of commission of the crime. Adamo argued that the testimony was exculpatory, since the crimes of which he was accused were specific intent crimes, and his intoxication vitiated intent. The trial court denied Adamo’s motion, and the state tried Adamo first. Adamo called Godwin as a witness at trial, but Godwin invoked his right against self-incrimination under the Fifth Amendment, and refused to testify.
Article V, § 26(B) of the Louisiana Constitution provides that the district attorney controls the administration of criminal prosecutions. Further, LSA-C.Cr.P. art. 61 states that “[s]ubjeet to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.” Additionally, LSA-C.Cr.P. art. 704 A provides: “Jointly indicted defendants shall be tried jointly unless: (1) The state elects to try them 17separately; or (2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.”
Federal jurisprudence has held that matters of severance and trial sequence are generally left to the sound discretion of the trial court, and that defendants have no inherent right to be tried in a certain order. United States v. Broussard, 80 F.3d 1025 (5th Cir. 1996); Mack v. Peters, 80 F.3d 230 (7th Cir.1996); United States v. DiBernardo, 880 F.2d 1216 (11th Cir.1989); Byrd v. Wainwright, 428 F.2d 1017 (5th Cir.1970). However, some federal decisions have stated, as dicta, that it may be proper under some circumstances to allow a severance of the parties so that one defendant might provide exculpatory evidence for a co-defendant. United States v. Doe, 655 F.2d 920, 927 (9th Cir.1980); United States v. Gay, 567 F.2d 916, 921 (9th Cir.1978), cert. denied, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978); United States v. DePalma, 466 F.Supp. 920, 922 (S.D.N.Y.1979).
In the only state appellate ease dealing directly with this issue, the court in State v. Walland, 555 So.2d 478 (La.App. 4 Cir.1989) reversed a trial court ruling denying the defendant’s request that his co-defendant be tried first so that the co-defendant could testify on his behalf. In Walland, the defendant (known by the alias of Jock Latiolais) and a co-defendant (Michael Hart) were jointly charged with possession of a stolen vehicle. The defendant filed a Motion for Severance, arguing that Hart wished to testify on his behalf, but that self-incrimination concerns would prevent it if the two were tried together. The motion was supported by an affidavit from Hart stating that he would testify on behalf of Latiolais at a separate trial, but that he would not testify at a joint trial due to concern for his own Fifth Amendment rights. The trial court granted the severance based on Hart’s affidavit. When Latiolais learned he was to be tried before Hart, he objected, arguing that Hart would |8not testify unless he was tried first. When the trial court denied his objection, Latiolais applied for supervisory writs to the Fourth Circuit. The court of appeal granted writs.
The Walland court held that the defendant’s constitutional right to present a defense entitled him to a trial following that of his co-defendant. The court reasoned:
Once the trial court granted a severance only one order of trials is equitably possi *4 ble. Any other would frustrate the reason for the severance. Hart must be tried first so that he can testify at Latiolais’ subsequent trial. The District Attorney’s statutory authority to control the prosecution cannot supersede the defendant’s constitutional right to a fair trial, to present a •defense, and to call his witness.
555 So.2d at 482. The court ordered that Michael Hart’s trial be scheduled prior to Jack Latiolais’ trial.
The court in Walland cited several federal court eases, but relied most heavily on the opinion in United States v. DiBernardo, supra. In that case, three co-defendants were to be jointly tried. Two, DiBernardo and Rothstein, filed Motions to Sever based on the affidavit of the third defendant, D’Apice, that he would provide .exculpatory testimony on their behalf at a separate trial. Otherwise, D’Apice would invoke his Fifth Amendment privilege. The Motion to Sever proposed that D’Apice be tried first. The trial court granted the Motion to Sever in 1981, but decided the defendants had no right to determine the order of trial. The trial of DiBernardo and Rothstein was held first. D’Apice was called as.a witness, but invoked his Fifth Amendment privilege against self-incrimination. DiBemardo and Rothstein were convicted, and moved for a new trial. They subsequently appealed, although the trial court never ruled on the Motion for New Trial.
Rothstein renewed his Motion for a New Trial in 1986 (by that time DiBernardo had disappeared). Among the grounds he asserted in the new motion was that D’Apice, having pled guilty and been sentenced in 1984, was now available to | testify on his behalf. In 1987 the trial court granted Rothstein’s motion, and ordered a new trial.[1] In its order, the district court recognized that it had erred in granting the Motion to Sever D’Apice, while compelling DiBernardo and Rothstein to stand trial first. The trial court further stated that D’Apice’s testimony was “material and could very well have resulted in a different verdict on behalf of both Defendants.” United States v. DiBernardo, 880 F.2d at 1222. The government took an appeal from the order of the district court granting a new trial. The Eleventh Circuit affirmed the trial court’s order, holding that the trial court properly granted the 1981 Motion to Sever, but that its decision to try DiBemardo and Rothstein before D’Apice constituted a de facto denial of the motion. As a result, DiBernardo and Rothstein were deprived of their right to a fair trial.
The DiBemardo court recognized that to succeed on such a motion, the movant must demonstrate: 1) a bona fide need for the co-defendant’s testimony; 2) the substance of the testimony; 3) its exculpatory nature and effect; and 4) the likelihood that the co-defendant will in fact testify if the cases are severed, citing Byrd v. Wainwright, supra.
However, the facts in the instant case can be distinguished from those in Walland and DiBemardo. In Walland and DiBemardo, the defendants moved for severance. The severances in those cases were based on the defendants’ assertions that their co-defendants would offer exculpatory evidence on their behalf. As noted above, the trial court in this case severed the parties at the behest of the state; not on defendant’s motion. Moreover, Adamo’s own Motion to Sever does not include any mention of Godwin’s offer to testify. Defendant did not move the court to try | ^Godwin first until after severance had been granted. Therefore, the trial court’s denial of defendant’s request to try Godwin first cannot be said to have been a “de facto denial” of the severance motion.
In Walland, the co-defendant, Michael Hart, offered an affidavit declaring that he would testify that Latiolais had no involvement with the stolen vehicle. In DiBemar-do, the co-defendant, D’Apiee, also filed an affidavit, stating he would provide exculpatory evidence for DiBernardo and Rothstein if he were tried first.
In the instant case, Godwin provided no affidavit as to his willingness to testify on Adamo’s behalf, or delineating the facts to *5 which he would testify. Adamo’s attorney, in fact, asked the trial court to “take his word for it” that Godwin had refused to testify unless he was allowed to go to trial first.
There is no indication that Adamo needed Godwin to testify; Adamo does not claim that Godwin was the only witness who could have testified regarding Adamo’s intoxication that day.
Even if Godwin was in fact willing to testify regarding defendant’s intoxication, this evidence did not have the exculpatory value that the evidence in Walland and DiBemar-do did. There is reference in the record to statements Adamo and Godwin made to police regarding their consumption of alcohol prior to the commission of the instant offenses. Adamo’s counsel also made reference that Godwin’s testimony would be that the two had been drunk and using drugs that day. However, the record contains no statement or affidavit by Godwin. There is, moreover, no indication in the record that the testimony Godwin might have provided would have made a difference in the outcome of the ease. Considering the facts of this case and the law cited above, we see no error in the trial court’s ruling that Adamo would be tried first.
| nAlso assigned as error are any and all errors patent on the face of the record.
The record was reviewed for errors patent, in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990); and State v. Godejohn, 425 So.2d 750 (La.1983). The transcript of the multiple offender proceedings shows that the trial court imposed defendant’s enhanced sentence without benefit of parole. The judge properly withheld parole benefits under the sentencing provisions of LSA-R.S. 14:27 and 14:64 (the statutes which are the basis for defendant’s substantive conviction). However, LSA-R.S. 15:529.1 G provides: “Any sentence under the provisions of this Section shall be without benefit of probation or suspension of sentence.” The trial court did not make such a stipulation in sentencing defendant. Under the holding in State v. Washington, 563 So.2d 530, 533 (La.App. 5 Cir.1990), the trial court was in substantial compliance with the multiple offender statute, since it did not affirmatively grant probation or suspension of sentence.
We affirm the defendant’s conviction and sentence.
AFFIRMED.

. The Eleventh Circuit considered the untimely motion for a new trial as a petition for habeas corpus relief.