

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-5-2002

# USA v. Jasin

Precedential or Non-Precedential:

Docket 0-4185

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Jasin" (2002). *2002 Decisions.* Paper 92.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/92

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 5, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-4185

UNITED STATES OF AMERICA

v.

THOMAS P. JASIN,

        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 91-cr-00602-08)
District Judge: Honorable Jan E. Dubois

Submitted under Third Circuit LAR 34.1(a)
December 7, 2001

BEFORE: ALITO, AMBRO, and GREENBERG,
Circuit Judges

(Filed: February 5, 2002)

        Michael L. Levy
        United States Attorney
        Robert A. Zauzmer
        Assistant United States Attorney
        Chief of Appeals
        Robert E. Goldman
        David L. Hall
        Assistant United States Attorneys
        Office of the United States Attorney
        615 Chestnut Street
        Suite 1250
        Philadelphia, PA 19106

         Attorneys for Appellee

        Mark E. Haddad
        Frank Menetrez
        Sidley Austin Brown & Wood
        555 West Fifth Street
        Suite 4000
        Los Angeles, CA 90013

         Attorneys for Appellant

OPINION OF THE COURT

GREENBERG, Circuit Judge:

This matter comes on before this court on defendant Thomas P. Jasin's appeal from the district court's order entered on November 22, 2000, denying his motion for a new trial based on newly discovered evidence pursuant to Fed. R. Crim. P. 33. For the reasons we state herein, we will affirm.

I. BACKGROUND

During the mid- to late-1980s, Thomas P. Jasin served as a high-ranking officer of ISC Technologies ("ISCT"), a subdivision of International Signal and Control ("ISC"), based in Lancaster, Pennsylvania. ISC designed, manufactured, sold and brokered sales of "medium to high technology electronic military equipment and systems for domestic and international customers." United States v. Jasin, No. CRIM. A. 91-00602-08, 1993 WL 259436, at *2 (E.D. Pa. July 7, 1993). James H. Guerin, its majority shareholder, founded ISC in 1971 and served as an officer and director of its several successor corporations after ISC went public in 1982.

From July 1984 until March 1986, Jasin was Vice President of International Marketing at ISCT, and from March 1986 until March 1987, he was its president. Jasin was demoted in March 1987, but he remained an employee at ISCT until March 1990. Throughout his tenure at ISCT, Jasin managed the Striker missile project involving the sale of South African anti-tank/anti-armor missiles, partially

2

manufactured with United States parts and technology, to China. In exchange for brokering the deal, ISC was to realize a 35% commission on the sale, which was valued at $300-$500 million.

A grand jury indicted Jasin on October 30, 1991, on three counts relating to a massive, 11-year conspiracy to evade the international arms embargo against South Africa. The 67-count indictment against 19 codefendants, including as significant here, Robert Clyde Ivy, alleged that ISC, certain of its high-level officers and employees, and numerous South African nationals and corporations conspired to transfer millions of dollars worth of military weapons and components to and from South Africa through various front companies in violation of the Arms Export Control Act, 22 U.S.C. S 2778, the Comprehensive Anti-Apartheid Act, 22 U.S.C. SS 5001 et seq. , and various provisions of the federal money laundering statutes, 18 U.S.C. SS 1956, 1957. According to the government, ISC conspired with the Armaments Corporation of South Africa Ltd. ("Armscor") -- a state-owned corporation developed to meet South Africa's armaments needs -- to export American-made arms, munitions, and weapons technology to Armscor to enhance its inventory and enable it to market weapons systems to other countries. See App. 28. The government also alleged that ISC and Armscor conspired to import South African missile components into the United States for testing and evaluation to facilitate the sale of Striker missiles to China. See App. 31.

Count One charged Jasin with participating in the broad conspiracy to circumvent the arms embargo against South Africa. See App. 27-28. Count twenty-three charged him with violating the Arms Export Control Act by falsely stating to United States government agencies that the country of origin of certain pieces of military hardware was Italy when it was, in fact, South Africa. See App. 59. Finally, count twenty-four charged him with violating the Arms Export Control Act by exporting missile flight data and technology from the United States to South Africa without a license or written authorization from the United States Department of State. See App. 60. The government dismissed count twenty-three before trial because the statute of limitations had expired on that count.

3

During a five-week trial in November and December 1992, the government presented evidence that Jasin participated in the unlawful conspiracy through his management of the Striker missile project. In particular, the government established that Jasin was involved in the illegal export of American-made components, such as UVP lamp bulbs and Eagle Pitcher batteries, to South Africa for integration into the Striker missile. The government also offered proof that Jasin arranged to have South African missile components -- including missile bodies, launch canisters, a cut-away model, and rocket motors -- imported unlawfully into the United States by routing them through Italy. Finally, the prosecution presented evidence that Jasin illegally transferred certain technical data relating to wind tunnel testing of Striker missile components to and from South Africa.[1]

Because of what he characterizes as poor trial preparation by his defense attorney, Jasin called only four witnesses at trial and was left with no alternative but to present nearly his entire case through his own testimony. See Br. of Appellant at 17. At trial he did not challenge the government's ample evidence proving the existence of a conspiracy to evade the arms embargo against South Africa, but argued that this mountain of evidence did not establish his involvement in or knowledge of the conspiracy.

For instance, Jasin admitted that he was aware of American-made lamp bulbs and batteries being sent to South Africa, but he testified that he had been advised that ISC had received authorization from Washington to export the components to South Africa. See App. 2218. He also conceded that he arranged to have the Striker missile components imported into the United States via Italy, but he insisted that he was under the honest but mistaken belief that such an arrangement was lawful as long as sufficient value had been added in Italy to make Italy the

_____

1. For a comprehensive review of the evidence presented by the government against Jasin and a thorough analysis of its sufficiency, see the district court's opinion in Jasin, 1993 WL 259436, at *4-10, denying Jasin's post-conviction motion for a judgment of acquittal.

4

appropriate country of origin for purposes of complying with United States customs regulations. See App. 2203-04, 2211. Finally, he testified that he never intended the South Africans to receive any technical data from the wind tunnel testing of the Striker missile. See App. 2283-84, 2318. Although he acknowledged that the South Africans eventually obtained the test results, he maintained that the transfer of data occurred after he had been demoted, and, therefore, he was not responsible for or involved with the transfer. See App. 2328.

On December 10, 1992, the jury returned a verdict of guilty on count one relating to the conspiracy and not guilty on count twenty-four relating to the transfer of technical data. On July 16, 1998, the court sentenced Jasin to 24 months in prison, which represented a downward departure from his guideline range. Jasin appealed, but we affirmed his conviction and sentence in an unreported memorandum opinion dated August 12, 1999. See United States v. Jasin, 191 F.3d 446 (3d Cir. 1999) (table). Jasin filed a petition for certiorari to the Supreme Court, but the Court denied his petition on January 24, 2000. See United States v. Jasin, 528 U.S. 1139, 120 S.Ct. 986 (2000).2

Jasin's current appeal relates strictly to proposed testimony of Robert Clyde Ivy, his former supervisor and a codefendant. Jasin urges that we should grant him a new trial at which he may present this testimony. From 1980 until 1989, Ivy served in various capacities as an officer and director of ISC, including Director and Chairman of the

_____

2. On January 23, 2001, Jasin filed a petition seeking relief pursuant to 28 U.S.C. S 2255 on the grounds that his prior attorney provided ineffective assistance of counsel. Jasin contends that his attorney, who previously had not tried a criminal case, completely failed to investigate Jasin's case or interview any witnesses who Jasin claimed could provide exculpatory evidence or useful expert testimony. Jasin also claims that his attorney neglected to object to the government's violations of Jasin's rights under Fed. R. Crim. P. 11(e)(6), the Speedy Trial Act, and the Due Process Clause. Although Jasin dedicates several pages of his brief to his attorney's alleged failures, his section 2255 motion still was pending in the district court when he took this appeal and is not implicated directly on this appeal.

Board of ISCT, President of ISC, and CEO of ISC International. Jasin subpoenaed Ivy to testify at trial, but Ivy invoked his Fifth Amendment privilege against self-incrimination and refused to testify. After years of delay, Ivy eventually pleaded guilty and the court sentenced him to a six-month term of imprisonment, which he served in 1997.

On November 23, 1999, nearly two and a half years after Ivy began serving his sentence, an investigator Jasin hired visited Ivy at his home. Over the strong objections of his wife, Ivy agreed to answer the investigator's questions. According to the investigator, Ivy stated that Jasin had no knowledge of the illegal conspiracy and never attended any meetings where the conspiracy had been discussed. The investigator also reported that Ivy stated that he"want[ed] the truth to come out" and that "[t]here was no need for an innocent guy to go to jail like I did." App. 3933.

On December 7, 1999, Ivy signed an affidavit declaring: "I informed Jasin of Guerin's statements to me that ISC's exports of defense components to South Africa had Washington's approval." Ivy. Aff. P 7 (App. 3939). He also stated in the affidavit that Jasin told him "in 1987 that ISC needed to be cautious that South Africans not obtain windtunnel data from tests conducted by ISC." Id. P 8 (App. 3939). Based on Ivy's affidavit and his comments to the investigator, Jasin maintains that Ivy would provide exculpatory testimony if called as a witness at a new trial. Contending that good faith is a complete defense to each of the charges against him, Jasin argues that Ivy's testimony confirms Jasin's innocence by proving that Jasin operated under the good faith belief that Washington had approved the export of Striker missile components.

On September 28, 1999, Jasin filed a pro se motion for a new trial "pursuant to Fed. R. Crim. P. 33 based upon newly discovered evidence." In his initial filing, Jasin did not mention Ivy's testimony, for his investigator had not yet interviewed Ivy. Even after learning of Ivy's statement and obtaining an affidavit from Ivy, however, Jasin did not seek leave to amend his Rule 33 motion to include the proposed Ivy testimony as a basis for relief. Nevertheless, he did mention Ivy's exculpatory statement in several of his subsequent filings, the first one being his pro se reply filed

6

on November 30, 1999, one week after his investigator interviewed Ivy.

On November 22, 2000, the district court denied Jasin's motion for a new trial, ruling, inter alia, that testimony of a codefendant who invoked his Fifth Amendment rights at trial is not newly discovered evidence. See United States v. Jasin, No. CRIM. 91-602-08, 2000 WL 1793397 (E.D. Pa. Nov. 22, 2000). Jasin filed a Notice of Appeal on December 1, 2000.3

II. JURISDICTION AND STANDARD OF REVIEW

A. Jurisdiction

The district court had jurisdiction pursuant to 18 U.S.C. S 3231, which provides district courts with original jurisdiction over all offenses against the laws of the United States. The district court denied Jasin's motion for a new trial based on "newly discovered evidence" on November 22, 2000, and Jasin filed a timely notice of appeal on December 1, 2000. Therefore, we have jurisdiction pursuant to 28 U.S.C. S 1291.

B. Standard of review

We review a district court's denial of a motion for a new trial pursuant to Rule 33 for abuse of discretion. See United States v. Pelullo, 14 F.3d 881, 886 (3d Cir. 1994). Nevertheless, we determine de novo as a matter of law the legal issue of whether the testimony of a codefendant who invoked his Fifth Amendment privilege at trial constitutes "newly discovered evidence" within the meaning of Rule 33. See United States v. Johnson, 199 F.3d 123, 125 (3d Cir. 1999).

_____

3. In its order entered on November 22, 2000, the district court directed Jasin to report to the Bureau of Prisons on December 12, 2000, to begin serving his 24-month term of imprisonment. On December 5, 2000, Jasin filed a pro se Emergency Motion for Stay of Imprisonment to delay his incarceration until after the court rendered a final decision on his section 2255 motion. See supra note 2. On December 11, 2000, the district court denied the motion, see United States v. Jasin, No. CR. 91-602-08, 2000 WL 1886576 (E.D. Pa. Dec. 11, 2000), so Jasin currently is serving his prison sentence.

III. DISCUSSION

A. Whether Jasin waived his Rule 33 claim with respect to the Ivy evidence?

The government first argues that Jasin cannot appeal the district court's denial of his Rule 33 motion with respect to the Ivy testimony because he did not raise the issue in the district court. In particular, the government points out that Jasin's motion did not identify the Ivy evidence as"newly discovered evidence" by reason of which the court should grant a new trial, and Jasin never sought leave to amend his motion to include the Ivy testimony as a basis for the relief. Indeed, because Jasin did not raise the Ivy testimony as a basis for relief in his motion, the government did not address the testimony in its brief and the court did not mention it in its ruling. Therefore, inasmuch as Jasin did not properly present the Ivy testimony issue to the district court, the government opines that Jasin has waived the only issue that he has raised on appeal. Thus, it regards Jasin's appeal as doomed.

Jasin responds that the Ivy testimony was, indeed, before the district court for he and the government mentioned the issue on five separate occasions. First, as the government concedes, Jasin mentioned the Ivy testimony in his pro se reply filed on November 30, 1999. See App. 3929-34. Second, Jasin raised the issue in a letter to the court dated December 9, 1999, in which he requested that Ivy's affidavit be docketed as an attachment to his November 30 reply. See App. 3935-39. Third, Jasin addressed the Ivy evidence in his answer to the government's reply on January 12, 2000. See App. 3953-67A. Fourth, the government squarely confronted the Ivy testimony in its letter to the court dated January 19, 2000, in which the government cited our unpublished decision in United States v. Evans, No. 98-1706 (3d Cir. Dec. 3, 1999) (per curiam), as dispositive of Jasin's motion for a new trial. See App. 3968-69. Fifth, Jasin again raised the Ivy evidence in his third answer to the government's third reply on January 20, 2000. See App. 3981-83.

A review of Jasin's Rule 33 motion confirms that he did not do the impossible by mentioning the Ivy testimony as

8

Jasin did not have Ivy's affidavit or his assurances that he would testify on Jasin's behalf until after Jasin filed the motion. As the parties agree, Jasin first referred to the Ivy testimony in his initial reply filed on November 30, 1999. Although Jasin did not move to amend his motion formally to include the Ivy evidence as a basis for seeking a new trial, Jasin filed the motion and the reply pro se, and, therefore, we hold his documents to a less stringent standard than those drafted by attorneys. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596 (1972); Zilich v. Lucht, 981 F.2d 694 (3d Cir. 1992). We also point out that even if Jasin explicitly had relied on the Ivy evidence by amending his motion the result in the district court would have been the same as that court held that the testimony of another codefendent that became available only after trial was not "newly discovered." See Jasin, 2000 WL 1793397, at *3-4. In all of the circumstances, we conclude that Jasin properly raised the Ivy evidence before the district court and did not waive the issue for appeal.4

B. Whether the District Court erred by failing to consider the Ivy evidence?

Federal Rule Criminal Procedure 33 authorizes a district court to grant a new trial "if the interests of justice so require." If a defendant seeks a new trial based on "newly discovered evidence," he must file the motion within three years of the verdict.5 To determine whether a new trial

_____

4. We hasten to add that we are not suggesting that a district court must scrutinize every document that a party files in connection with a pending motion to determine whether the court effectively should expand the scope of the motion. Here, however, there is a special situation as Jasin filed his papers pro se, he mentioned the Ivy testimony in several documents he filed, and the government addressed the issue that this testimony raised. Thus, our ruling is very narrow and is dependent on the presence of the unusual circumstances of this case.

5. In 1998, Rule 33 was amended in two significant ways. First, the time period within which a motion for a new trial based on newly discovered evidence must be filed was increased from two to three years. Second, under the previous version of Rule 33, the time period for filing a motion for a new trial ran from the "final judgment," which referred to the action of the court of appeals on a direct appeal from the conviction. The rule

9

based on "newly discovered evidence" should be granted, courts apply the following five-part test:

> (a) the evidence must be[,] in fact, newly discovered, i.e., discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) evidence relied on[ ] must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir. 1976). See also United States v. DiSalvo, 34 F.3d 1205, 1215 (3d Cir. 1994).

As already noted, the district court's order of November 22, 2000, denying Jasin's motion for a new trial did not specifically address the Ivy evidence. Nevertheless, inasmuch as we have determined that Jasin raised the issue presented by the Ivy evidence in the district court, we agree with Jasin that the court erred in failing to consider the evidence. Indeed, the government believes that, assuming Jasin has not waived the issue, we should remand the case so that the district court properly can consider whether the Ivy testimony constitutes "newly discovered evidence." See Br. of Appellee at 45. Jasin requests, however, that we decide the issue instead of remanding the case. He argues that remanding the case will deny him effective relief for he likely would have served his entire sentence by the time the district court finally considers the matter. See Br. of Appellant at 32.

We will proceed as Jasin wishes. While ordinarily in circumstances similar to those here we might remand the

_____

was changed to establish the district court's verdict as the point at which the period begins to run.

Because Jasin was convicted in 1992, the district court applied the pre-1998 version of Rule 33 to his case. Inasmuch as we affirmed Jasin's conviction on August 12, 1999, and Jasin filed his motion for a new trial on September 26, 1999, Jasin filed his motion well within the applicable time period.

10

matter for reconsideration by the district court, as we stated in PAAC v. Rizzo, 502 F.2d 306, 308 n.1 (3d Cir. 1974), "[i]t is proper for an appellate court to affirm a correct decision of a lower court even when that decision is based on an inappropriate ground." Of course, if we uphold the order denying the new trial, our opinion will come comfortably within that principle. Moreover, inasmuch as we make our determination as a matter of law that the Ivy testimony is not newly discovered evidence, we see no reason to remand.

C. Whether the unavailable testimony of a codefendant who invokes his Fifth Amendment privilege at trial qualifies as "newly discovered evidence" under Rule 33 ?

The pivotal issue on appeal is whether the previously known, but only newly available, testimony of a codefendant who invoked his Fifth Amendment privilege against self-incrimination and did not testify at trial qualifies as "newly discovered evidence" for the purpose of considering a motion for a new trial under Rule 33. After careful consideration of this matter, we join the majority of courts of appeals in concluding that evidence known but unavailable at trial does not constitute "newly discovered evidence" within the meaning of Rule 33.6

The first prong of the Iannelli test addresses whether the proffered evidence is "newly discovered" -- that is, whether it was known to the defendant at trial. See United States v. Bujese, 371 F.2d 120, 125 (3d Cir. 1967) ("It is equally well settled that evidence is not `newly discovered' when it was known or could have been known by the diligence of the defendant or his counsel."). It is undisputed that Jasin was aware of the substance of the Ivy testimony at the time of trial, but that the testimony nevertheless was unavailable because Ivy would not testify and could avoid doing so by

_____

6. We are one of only a few courts of appeals who have yet to resolve this issue in a published opinion. The "question of whether testimony which was previously unavailable because of a witness' invocation of a fifth amendment right, properly can be deemed `newly discovered' under Rule 33" surfaced in United States v. Herman, 614 F.2d 369, 372 (3d Cir. 1980), but we decided to let the district court address the "thorny" issue in the first instance on remand.

11

asserting his Fifth Amendment right against self-incrimination.7 It was only after Ivy had pleaded guilty and served his sentence that his testimony became available. In these circumstances, Jasin urges us to adopt the approach of the Court of Appeals for the First Circuit in United States v. Montilla-Rivera, 115 F.3d 1060 (1st Cir. 1997), by establishing that "newly available evidence" constitutes "newly discovered evidence" within the meaning of Rule 33. The government, on the other hand, requests that we reject the holding in Montilla-Rivera and follow the majority rule that "newly available evidence" is not synonymous with "newly discovered evidence."

In Montilla-Rivera, the three defendants sold two kilograms of cocaine to a DEA confidential informant and subsequently were indicted for distribution and conspiracy to distribute cocaine. See id. at 1061-62. Two defendants entered guilty pleas, but defendant Montilla went to trial, maintaining that his mere presence did not constitute participation in the drug sale. See id. He subpoenaed his co-defendants as witnesses, but informed the court that they would exercise their Fifth Amendment rights and would not testify, as they both were awaiting sentencing. See id. at 1063. After being convicted on the conspiracy count, Montilla filed a motion for a new trial, attaching thereto affidavits from his codefendants, who since had been sentenced, to the effect that Montilla had not been involved in the drug transaction. See id. The district court denied Montilla's motion, ruling that his codefendants were known and available at the time of trial, and therefore, their testimony did not constitute "newly discovered evidence" under Rule 33. See id.

_____

7. Indeed, our holding is premised entirely on the conclusion that Jasin was aware of the substance of Ivy's testimony at trial, for if Ivy presented
evidence of which Jasin had no knowledge at trial, Ivy's testimony clearly would be "newly discovered evidence" under the first prong of Iannelli and would be a basis for granting a new trial if it satisfied the remaining
prongs. Nevertheless, nowhere in his briefs or the record does Jasin intimate that he was unaware of the substance of Ivy's statements at trial. Instead, he argues that we should make an exception under the Iannelli test for previously known but newly available evidence.

The Court of Appeals for the First Circuit reversed on the grounds that "[t]his circuit has, for almost twenty years, held that the `newly discovered' language of Rule 33 encompasses evidence that was `unavailable.' " Id. at 1066. The court rejected the district court's conclusion that the codefendants were available to testify, explaining that Montilla "did not have the power to compel them to testify at his trial in light of their Fifth Amendment privileges." Id. at 1065. In reaching its result, the court reasoned that "there seems little distinction between evidence which a defendant could not present because he did not know of it and evidence which he could not present because the witness was unavailable despite exercising due diligence." Id. at 1066.[8]

The government dismisses Montilla-Rivera as an anomaly

_____

8. Jasin also cites two opinions of the Court of Appeals for the Fifth Circuit that he believes by implication held that "newly discovered evidence" includes testimony of codefendants who refused to testify at trial by asserting their Fifth Amendment rights. In Newsom v. United States, 311 F.2d 74, 75 (5th Cir. 1962), defendants Newsom and Linton were indicted jointly for selling 276 grams of marijuana to an undercover federal agent. Newsom went to trial and was convicted. See id. Only days later, Linton entered a guilty plea and stated in open court that he was sorry for getting his friend Newsom in trouble because Newsom had no knowledge of the drug sale. See id. at 78. Shortly thereafter, Newsom filed a motion for a new trial accompanied by an affidavit from Linton attesting to Newsom's innocence. See id. at 78-79. The court of appeals reversed the district court's denial of the motion on the grounds that the evidence against Newsom was "weak," that Newsom was unable to avail himself of Linton's testimony at trial, and that another jury could "find Linton's testimony sufficiently credible to raise a reasonable doubt as to the truth and the meaning of the special employee, and hence of the defendant's guilt." Id. at 79.

In Ledet v. United States, 297 F.2d 737, 738 (5th Cir. 1962), customs agents found 41 grams of heroin under the passenger seat occupied by defendant Ledet in a car owned and driven by defendant Bourg. At trial, Bourg opted not to testify, but Ledet took the stand and testified that he knew nothing about the heroin. See id. After both defendants were convicted and sentenced, Bourg offered an affidavit completely exculpating Ledet. See id. at 739. The court of appeals reversed the district court largely based on the "ambiguous facts" concerning possession of the heroin. The court explained that:

> the fact that total and complete possession by Bourg, the owner and driver of the automobile would be entirely consistent with Ledet's

13

and argues that we should follow the majority rule that testimony known to the defendant at the time of trial is not "newly discovered evidence," even if it was unavailable at trial by reason of the witness's Fifth Amendment privilege against self-incrimination. See United States v. Freeman, 77 F.3d 812, 817 (5th Cir. 1996) ("When a defendant is aware of a co-defendant's proposed testimony prior to trial, it cannot be deemed newly discovered under Rule 33 even if the co-defendant was unavailable because she invoked the Fifth Amendment."); United States v. Theodosopoulos, 48 F.3d 1438, 1448-50 (7th Cir. 1995) (concluding that post-trial testimony of person who exercised his Fifth Amendment right against self-incrimination does not qualify as "newly discovered evidence" because defendant knew substance of testimony during trial); United States v. Glover, 21 F.3d 133, 138 (6th Cir. 1994) (concluding that newly available testimony of individual who asserted his Fifth Amendment privilege against self-incrimination was not "newly discovered evidence" within the meaning of Rule 33); United States v. Muldrow, 19 F.3d 1332, 1339 (10th Cir. 1994) ("If a former codefendant who originally chose not to testify subsequently comes forward and offers testimony exculpating a defendant, the evidence is not

_____

> complete innocence or knowledge of, or dominion over, the narcotics, requires that a new trial be granted in order that the previously silent witness who knows most about the transaction may be given an opportunity to testify to facts that he has now asserted in the form of an affidavit.

Id.

Jasin's reliance on Newsom and Ledet, while understandable, is misplaced for the court based both opinions on the "peculiar circumstances" of the respective cases. Newsom, 311 F.2d at 79; Ledet, 297 F.2d at 739. Indeed, the court later explicitly limited these cases to their facts and rejected the contention that Jasin makes here that "newly available evidence" constitutes "newly discovered evidence" within the meaning of Rule 33. See United States v. Metz , 652 F.2d 478, 480 (5th Cir. 1981). See also United States v. Perez-Paredes, 678 F. Supp. 259, 261 (S.D. Fla. 1988) (stating that "Metz narrowly restricts both Ledet and Newsom to their facts and . . . rejects the notion that newly available evidence is synonymous with newly discovered evidence for the purposes of a motion for a new trial").

14

newly discovered if the defendant was aware of the proposed testimony prior to trial."); United States v. Dale, 991 F.2d 819, 838-39 (D.C. Cir. 1993) ("The unanimous view of circuits who have considered the question is that this [newly discovered evidence] requirement is not met simply by offering the post-trial testimony of a co-conspirator who refused to testify at trial."); United States v. Rogers, 982 F.2d 1241, 1245 (8th Cir. 1993) (stating that "when a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a co-defendant, the evidence is not `newly discovered' "); United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir. 1992) ("The Ninth Circuit has adopted the view that when a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a co-defendant, the evidence is not newly discovered." (internal quotation marks omitted)); United States v. Lockett, 919 F.2d 585, 591 (9th Cir. 1990) (stating that "[w]hen a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a co-defendant, the evidence is not `newly discovered' "); United States v. DiBernardo, 880 F.2d 1216, 1224-25 (11th Cir. 1989) (concluding that newly available, exculpatory testimony of codefendant "cannot be deemed `newly discovered evidence' within the meaning of Rule 33" if defendants were aware of testimony before trial); United States v. Metz, 652 F.2d 478, 480 (5th Cir. 1981) (concluding that testimony of codefendant who was unavailable at joint trial because he invoked the Fifth Amendment "cannot be considered `newly discovered' "); United States v. Diggs, 649 F.2d 731, 740 (9th Cir. 1981) ("When a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a co-defendant, the evidence is not `newly discovered.' "), overruled on other grounds, United States v. McConney, 728 F.2d 1195 (9th Cir. 1984) (en banc). See also United States v. Yu, 902 F. Supp. 464, 468 (S.D.N.Y. 1995) (concluding that testimony of individual who did not testify at trial "can at best be characterized as `newly available,' which is not synonymous with newly discovered evidence on a Rule 33 motion" (internal quotation marks omitted)), aff'd mem., 101 F.3d 1393 (2d Cir. 1996); United States v. Matos, 781

15

F. Supp. 273, 279 (S.D.N.Y. 1991) (same); United States v.
Persinger, 587 F. Supp. 899, 901 (W.D. Pa. 1984).

Courts generally consider exculpatory testimony offered
by codefendants after they have been sentenced to be
inherently suspect. Indeed, "a court must exercise great
caution in considering evidence to be `newly discovered'
when it existed all along and was unavailable only because
a co-defendant, since convicted, had availed himself of his
privilege not to testify." United States v. Jacobs, 475 F.2d
270, 286 n.33 (2d Cir. 1973). The rationale for casting a
skeptical eye on such exculpatory testimony is manifest.

> It would encourage perjury to allow a new trial once co-
> defendants have determined that testifying is no longer
> harmful to themselves. They may say whatever they
> think might help their co-defendant, even to the point
> of pinning all the guilt on themselves, knowing they are
> safe from retrial. Such testimony would be
> untrustworthy and should not be encouraged.

Reyes-Alvarado, 963 F.2d at 1188.

Jasin attempts to distinguish these cases by suggesting
that the courts weighed all of the Iannelli factors before
ruling on the motion rather than merely applying a
"categorical ban" on codefendant testimony that was
unavailable at trial because the individual asserted his
Fifth Amendment rights. See Br. of Appellant at 40. He
maintains that when these courts denied motions for a new
trial based on newly available codefendant testimony, at
least one other Iannelli factor was unsatisfied, such as, for
example, diligence, materiality, or likelihood of producing
an acquittal. See id. Although this is true in some of the
cases, it is not true in all of them. For instance, the Court
of Appeals for the Ninth Circuit in Reyes-Alvarado ended its
Iannelli-style analysis after it determined that the evidence
was not "newly discovered" insofar as it had been offered by
codefendants who had refused to testify at trial. The Court
of Appeals for the Eleventh Circuit in DiBernardo likewise
considered only whether there was "newly discovered
evidence" in affirming the district court's denial of the
motion for a new trial. See also Rogers, 982 F.2d at 1245;
Lockett, 919 F.2d at 591-92; Metz, 652 F.2d at 479-81.

16

Although it may be advisable for a district court to analyze each prong of the Iannelli test after finding that one factor has not been met, such an analysis of the remaining factors is not required inasmuch as the failure of one element is a sufficient basis to deny a motion for a new trial. [9]

Jasin also cites two of our opinions that he believes implicitly reject a categorical ban on newly available codefendant testimony to support a Rule 33 motion. In United States v. Rocco, 587 F.2d 144 (3d Cir. 1978), four men were indicted for embezzling and conspiring to embezzle $100,000 from a union pension fund. Defendant La Duca went to trial and called his codefendant, Neiman, as a witness, but Neiman, who already had pled guilty to the conspiracy count, invoked his Fifth Amendment rights and thus would not testify. Nevertheless, after Neiman was sentenced and La Duca was convicted, Neiman expressed his willingness to testify on La Duca's behalf. Consequently, La Duca filed a motion for a new trial supported by an affidavit in which Neiman stated he would provide testimony exonerating La Duca.

The district court denied the motion on the grounds that La Duca had not been diligent in requesting that the government provide Neiman use immunity for his testimony. Although we rejected the district court's rationale, we nevertheless affirmed its denial of the motion for a new trial on the alternative grounds that (1) La Duca had not been diligent in determining whether Neiman still had a Fifth Amendment privilege at the time of La Duca's trial and (2) Neiman's testimony probably would not have produced an acquittal. Jasin maintains that our application

_____

9. We recognize that in some instances, application of the Iannelli factors may require a necessarily inexact analysis as, for example, whether the evidence probably would have produced an acquittal. In such circumstances, it might well be particularly prudent for a court considering a Rule 33 motion to consider all the Iannelli factors. On the other hand, if a court determines as a matter of law that evidence is not newly discovered, then no matter what the court's conclusions are as to the other Iannelli factors, it must deny the defendant's Rule 33 motion. Of course, even in those circumstances, it might be advisable for a district court to consider other Iannelli factors, as it is possible that a court of appeals might regard the evidence as newly discovered.

17

of the Iannelli test to Neiman's testimony despite his status as a codefendant was an implicit rejection of a categorical ban on newly available codefendant testimony.

In United States v. Lowell, 649 F.2d 950, 966 (3d Cir. 1981), defendants Lowell and Pionzio were tried jointly for and convicted of participation in a bribery conspiracy. Pionzio did not testify at trial, but later, under a grant of immunity, he provided grand jury testimony that appeared to exculpate Lowell. Lowell did not file a Rule 33 motion based on Pionzio's grand jury testimony with the district court, but instead raised the issue for the first time on appeal. In our opinion, we noted that Pionzio's grand jury testimony, if true, completely contradicted the only witness who tied Lowell to the bribery conspiracy. Even so, we refused to weigh the probative value of Pionzio's testimony, stating that it would "be necessary for Lowell to raise this issue, if at all, in an appropriate motion under Fed. R. Crim. P. 33, to be presented in the first instance to the district court." Id. at 966. We added:"Pionzio's newly given testimony may or may not be sufficiently exculpatory to warrant retrial on the basis of newly discovered evidence." Id.

Even though Jasin relies on these opinions, neither one controls our result. Although Jasin is correct that Rocco did not reject Neiman's testimony because of his status as a codefendant, we did not address squarely the issue of whether testimony that was unavailable to a defendant as a result of the witness's Fifth Amendment privilege against self-incrimination qualifies as "newly discovered evidence" under Rule 33. Similarly, Lowell is of little help to Jasin. We did not say in Lowell that the codefendant's testimony would constitute newly discovered evidence; we merely stated that if the defendant were to raise the issue at all, he would have to do so in a Rule 33 motion before the matter could be addressed on appeal. At bottom, although these two decisions perhaps leave the door open for us to adopt the holding in Montilla-Rivera, the opinions do not make a persuasive case for such an approach.

The government urges us to reject Jasin's interpretation of Rocco and Lowell and instead follow the reasoning of our more recent unreported opinion in United States v. Evans,

18

No. 98-1706 (3d Cir. Dec. 3, 1999) (per curiam), which the government cites only as "persuasive authority." Although there can be no doubt that Evans supports the result we reach here, inasmuch as the opinion is unreported it should not be regarded as precedential. See Third Circuit IOP 5.8. Thus, we reach our result on the bases we have set forth independently of our result in Evans .

Having said that, we nevertheless will explore the Evans decision further, for it exposes the fallacy of Jasin's argument. In that case, defendants Evans and Handy were convicted of various offenses related to a bank robbery. Evans filed a Rule 33 motion several years later based on an affidavit from Handy stating that Handy's attorney informed the prosecution during plea negotiations that the masked man accompanying Handy during the robbery was actually the government's key witness, Tyrone Mallory, not Evans. The panel considered the substance of the statement to constitute two distinct pieces of evidence: (1) that Evans was not the masked robber and (2) that Mallory was the masked robber.

The panel concluded that the first piece of evidence that Evans was not the masked robber failed the first prong of the Iannelli test because Evans knew at the time of trial that he was not the masked man. In so holding, the panel explicitly rejected Montilla-Rivera, opting to align with other courts of appeals who have determined that "newly available evidence" is not synonymous with "newly discovered evidence." The panel concluded that our "limited jurisprudence on this narrow matter does not allow for Rule 33 relief if the evidence is newly available." Id. at 7 n.4 (citing Herman, 614 F.2d at 372, and Bujese, 371 F.2d at 125).

With regard to the second piece of evidence, the panel stated that "[t]he evidence that Mallory was the masked robber is conceivably new and may meet the first prong of the test." Id. at 7. The panel nevertheless affirmed the district court's denial of the motion for new trial because it could not "say that this testimony would probably have produced an acquittal." Id. Jasin insists that the holding with respect to this second piece of evidence supports his position insofar as the panel did not bar the newly available

19

testimony because it was offered by a codefendant, but instead fully applied the Iannelli test and ultimately concluded that the evidence failed the fifth prong. Jasin loses sight, however, of the crux of the issue. Unlike Evans who did not know the substance of Handy's statement regarding the true identity of the masked robber, Jasin was aware of the substance of Ivy's testimony -- namely, that Jasin was not involved in or aware of the conspiracy. In other words, Ivy's testimony is analogous to the first part of Handy's statement, not the second. Jasin fails to understand that whether the defendant was aware of the substance of the testimony at the time of trial-- not whether the testimony came from a codefendant who asserted his Fifth Amendment privilege at trial-- is the determining factor under the first prong of the Iannelli test. Consequently, even under Jasin's reading of Evans, Jasin's knowledge of the substance of Ivy's testimony before trial, regardless of Ivy's unavailability as a witness during trial, is fatal to the Rule 33 motion for new trial.

Finally, Jasin argues that imposing a per se ban10 on subsequently available codefendant testimony is not "in the interests of justice." Jasin recognizes that such testimony should be considered with greater caution, but he insists that courts should consider it with this justified skepticism in the context of all five prongs of the Iannelli test rather than categorically banning it under the "newly discovered" prong. He argues that if courts are concerned about the credibility of a convicted codefendant's testimony because he or she falsely may assume all of the blame without further consequences in an effort to help his or her cohort, courts should weigh this possibility under the fifth Iannelli prong when they determine whether such questionable testimony probably would produce an acquittal. Jasin contends that his approach "affords an innocent defendant -- particularly one who was convicted, as Jasin was here,

_____

10. Throughout his briefs, Jasin insists on characterizing the holdings of the majority of the courts of appeals as imposing a per se ban on newly available codefendant testimony. We do not interpret these opinions or our holding as such. The standard we adopt today bans newly available codefendant testimony only if the defendant was aware of the substance of the testimony at trial.

20

on weak evidence -- the opportunity to raise exculpatory evidence that he was unable to present at trial through no fault of his own." Br. of Appellant at 43-44. 11

The government responds that the rule proposed by Jasin would cause chaos within the criminal justice system. It argues that acceptance of Jasin's position that testimony of a codefendant after his or her sentencing qualifies as "newly discovered evidence" under Rule 33 "could render countless joint criminal trials meaningless, only to be followed, in later years, by multiple new trials as defendants jockey to offer testimony for each other in an effort to obtain different results." Br. of Appellee at 49 n.10.

In the end, we opt to follow the majority rule in concluding that a codefendant's testimony known to the defendant at the time of trial cannot be considered "newly discovered evidence" under Rule 33, regardless of the codefendant's unavailability during trial because of invocation of his Fifth Amendment privilege. Not only does such an approach establish a straightforward bright-line rule, but it is anchored in the plain meaning of the text of Rule 33. Although Jasin advances a reasonable justification for allowing a district court to consider certain "newly available" testimony of a witness who previously invoked his Fifth Amendment privilege when deciding a motion for a new trial, he cannot overcome the unambiguous language of Rule 33, which contemplates granting of a new trial on the ground of "newly discovered evidence" but says nothing about newly available evidence. Moreover, as we have explained, there are compelling practical reasons to reject his argument.

In light of our decision to adopt the majority rule that "newly available evidence" is not synonymous with "newly discovered evidence," it is clear that Jasin is not entitled to a new trial under Rule 33. Although we believe that the district court should have considered the Ivy evidence under the Iannelli test, we nevertheless will affirm its denial of the motion for a new trial, for it is undisputed that Jasin knew of the substance of Ivy's testimony before trial.

_____

11. Of course, Jasin's characterization of the case against him as "weak" is his own. The district court merely said that the case was close.

21

Jasin's failure to satisfy the first requirement under Iannelli obviates the need for further analysis of the Ivy evidence under the four remaining prongs of the Iannelli  test. Accordingly, the order of the district court will be affirmed.

IV. CONCLUSION

For the foregoing reasons, we will affirm the district court's order entered on November 22, 2000.

AMBRO, Circuit Judge, concurring:

I concur because I do not believe that Jasin can satisfy the fifth Iannelli prong--that the new evidence would probably result in his acquittal. United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir. 1976). I write separately, however, because I respectfully disagree with the majority's position on the first prong--whether the statements in Ivy's affidavit are in fact newly discovered evidence. The majority professes not to follow a per se rule barring a co-defendant's previously unavailable testimony, but it achieves the same result, I believe, by construing too narrowly what it means for evidence to be newly discovered. I believe that "the better rule is not to categorically exclude the testimony of a co-defendant who asserted his Fifth Amendment privilege at trial under the first prong but to consider it, albeit with great skepticism, in the context of all prongs of our [Iannelli] test." United States v. Montilla-Rivera, 115 F.3d 1060, 1066 (1st Cir. 1997).

The majority's approach is nuanced. It eschews a "per se ban on newly available codefendant testimony." Maj. Op. at n.10. Instead, "[t]he standard we adopt today bans newly available codefendant testimony only if the defendant was aware of the substance of the testimony at trial." Id. But, according to the majority, a defendant who has a general impression of how a witness might testify at trial is "aware" of that witness's testimony. Thus, the defendant cannot later employ it to prove his innocence because he ostensibly knew the non-existent testimony during his trial.

Rule 33, however, is not always so strict and criminal defendants are not so prophetic. In my view, this case survives the first Iannelli prong because Jasin not only lacked the statements in Ivy's affidavit at his trial, he did not even have particularized knowledge of what Ivy would say. Ivy's affidavit exculpating Jasin in some measure did not exist until December 1999. The record does not show that Jasin knew at trial what Ivy would have testified. That means that the only "evidence" that existed in 1992 was Jasin's general awareness that Ivy knew the extent of his involvement in the conspiracy.1 Such awareness cannot

_____

1. As a separate matter, I question the majority's implicit conclusion that
Jasin possessed at his trial the "evidence" he now seeks to introduce. To

23

substitute for particularized information. I cannot say that Jasin knew the substance of Ivy's putative testimony simply because they shared a common experience.

By comparison, most of the cases from other circuits on which the majority relies involved defendants who at trial actually had particularized knowledge about or even the text of the evidence they later claimed was "newly discovered." See United States v. Freeman, 77 F.3d 812, 817 (5th Cir. 1996) (defendant actually knew the proposed testimony of her co-defendant); United States v. Theodosopoulos, 48 F.3d 1438, 1448-50 (7th Cir. 1995) (defendant's attorney had interviewed co-defendant prior to trial and obtained the contents of his proposed testimony); United States v. Glover, 21 F.3d 133, 138 (6th Cir. 1994) (defendant was "well aware of [previously unavailable witnesses'] testimony prior to trial"); United States v. Muldrow, 19 F.3d 1332, 1339 (10th Cir. 1994) ("substance of [co-defendant's] testimony was known to defendant's counsel prior to trial and was produced at trial"); United States v. Rogers, 982 F.2d 1241, 1245 (8th Cir. 1993) (defendant claimed as newly discovered evidence a letter from a co-defendant available to him throughout the trial); United States v. DiBernardo, 880 F.2d 1216, 1224-25 (11th Cir. 1989) (defendants seeking new trial were "well aware of [co-defendant's] proposed testimony prior to trial"); United States v. Metz, 652 F.2d 478, 480 (5th Cir. 1981) (defendant's attorney knew prior to trial the "entire substance," including "specific details and facts," of co-defendant's testimony).

_____

me, evidence is something tangible, such as testimony or documents, that a litigant can present to a factfinder. Evidence is not merely an abstraction.

In this case, tangible evidence that Jasin could present to a court on this issue did not exist until 1999. Until then, Jasin had little more than
a hunch what Ivy would testify. A hunch is not evidence, as demonstrated by the obvious fact that no court would accept it as such. But the majority would accept Jasin's suspicion of what Ivy knew as evidence. Because all that Jasin had at trial was at most an informed guess, I disagree. That distinction by itself should get Jasin past the first
Iannelli prong.

24

I am unconvinced by the Government's argument that perjured testimony by former co-defendants will cause turmoil in the courts "as defendants jockey to offer testimony for each other in an effort to obtain different results." Gov't Br. at 49 n.10. While I agree that there is some risk of perjury in permitting a former co-defendant under no threat of criminal prosecution to testify, the appropriate response is not to ban such testimony. Rather, I would rely on the adversarial process, on the court's discretion to exclude irrelevant or prejudicial testimony, and on its ability to assess credibility. Moreover, there is no sign that chaos has reigned in the First Circuit since the Montilla-Rivera decision. Indeed, the Government allocates its dire prediction only a footnote near the end of its brief.

In addition, I am concerned that the Government will be encouraged by today's holding to delay trials of co-defendants who might give exculpatory testimony in order to bar that testimony. Although this concern is speculative, it is no more so than the Government's predictions the other way.

My reading of what constitutes newly discovered evidence does not mean that I would grant new trials with abandon. While I would permit a defendant to overcome the first prong more frequently than the majority would, the remaining Iannelli prongs will defeat many new trial motions anyway. Frequently, although a piece of evidence is new, it will also be cumulative because it tends to prove a fact already determined through other evidence. In that case, the new trial motion will be denied under the third prong. In other cases, the fourth or fifth Iannelli prongs will prevent a new trial because the newly discovered evidence is not material or is unlikely to result in an acquittal.

Although I would permit Jasin to overcome the first Iannelli prong, I concur in the majority's result because I am not convinced that the statements in Ivy's affidavit would probably result in an acquittal. The record, in conjunction with Ivy's carefully worded affidavit, suggests that Jasin knew enough of the conspiracy to support his conviction. In any event, our holding today does not prevent

25

Jasin from presenting evidence of his innocence in otherwise proper proceedings under 28 U.S.C. S 2255.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit