NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1072
No. 12-4510
_____

UNITED STATES OF AMERICA

v.

ROBERT MCKNIGHT
a/k/a Tweety Bird

Robert McKnight,
                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-10-cr-00121-001)
District Judge:  Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit LAR 34.1(a)
April 10, 2014

Before:  RENDELL, HARDIMAN and BARRY, *Circuit Judges*.

(Filed: June 12, 2014 )
_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

Robert McKnight appeals orders of the District Court denying his motion for a

new trial and his motion for reconsideration. We will affirm.

I

On January 20, 2010, McKnight and co-defendant Lamont Paige stole $5,893.99 from the TruMark Financial Credit Union branch in Jenkintown, Pennsylvania. During the robbery, a masked McKnight brandished a handgun and ordered patrons and employees to remain silent, while Paige vaulted over the bank counter and removed cash from two drawers. The robbery was captured on film by bank security cameras. Other video recovered from nearby security cameras showed the two men, unmasked, standing outside the bank moments before the robbery as well as later fleeing the scene. In the latter video, McKnight was filmed tucking a gun into his waistband.

Unbeknownst to Paige, the cash he took contained dye packs designed to spray dye and teargas if it was removed a certain distance from the bank entrance. As McKnight and Paige fled the bank, the dye packs detonated, emitting red smoke. Brittany Boggi, who was riding in a car approximately 15 feet from the blast, saw the two men, who were then unmasked, surrounded by a cloud of red smoke. In the days after the robbery, McKnight enlisted two of his cousins to help him hide from the authorities, admitting his guilt to both. One cousin called 911 on February 3, 2010, and reported McKnight's admissions to the Federal Bureau of Investigation (FBI).

FBI Special Agent Joshua N. Sircus obtained an arrest warrant for McKnight the next day. In the probable cause affidavit supporting the warrant application, Sircus stated

2

that McKnight had been identified by two witnesses who viewed still photographs of McKnight, unmasked, standing outside of and fleeing the bank. The affidavit noted that the witnesses knew McKnight well enough to recognize and identify him. Further, the affidavit stated that the witnesses informed Sircus that McKnight had previously resided with his aunt and with his wife at two Philadelphia addresses. McKnight was arrested four days later.

On March 4, 2010, a grand jury returned a one-count indictment against McKnight, charging him with armed bank robbery, in violation of 18 U.S.C. §§ 2113(d) and 2. During the trial, the prosecution introduced video of the robbery, as well as still photographs produced from the video. Boggi confirmed that the men in the images were the same men she had seen when the dye packs exploded. McKnight's cousins, who had harbored him after the crime, also testified about his admissions of guilt. McKnight was convicted by a jury, and the District Court sentenced him to 300 months' imprisonment, five years of supervised release, a special assessment of $100, and $40 restitution. He filed a timely appeal, which was stayed to allow him to move for a new trial under Fed. R. Crim. P. 33.

On March 29, 2012, McKnight filed a pro se "Motion For New Trial (Or In the Alternative), An Evidentiary Hearing" in the District Court, contending that he had newly discovered evidence that warranted a new trial. Specifically, he claimed that Sircus's probable cause affidavit contained intentional falsehoods, which vitiated the probable

3

cause that supported his arrest. Additionally, McKnight alleged that he received ineffective assistance of counsel at trial, and claimed that he was entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), because of the purported falsehoods in Sircus's affidavit.

The District Court denied McKnight's motion, holding that the issues advanced were not newly discovered because McKnight had known of them prior to trial. It also found that McKnight's ineffective assistance claim failed because it was not properly raised in a motion for a new trial. The District Court denied McKnight's subsequent motion for reconsideration. Therein, it also ruled that McKnight was not entitled to a *Franks* hearing despite the alleged discrepancies in Sircus's warrant affidavit, as McKnight had not demonstrated how the purported errors would undermine the legitimacy of his arrest.

McKnight timely appealed.[1]

II

McKnight contends that the probable cause affidavit supporting his arrest warrant contained two errors which rendered his arrest illegitimate. First, he claims that the

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's denial of a motion for a new trial for abuse of discretion. *Hook v. Ernst & Young*, 28 F.3d 366, 370 (3d Cir. 1994). "We have not yet identified the standard of review for a district court's denial of a request for a *Franks* hearing, and our sister circuits are divided on the correct approach." *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012). We need not

identification witnesses discussed in Sircus's affidavit incorrectly reported that he had once lived with his aunt at 1667 Haworth Street, Philadelphia, when he had in fact lived with her at a different address. He thus alleges that the witnesses mentioned did not know him well, and that Sircus had knowingly fabricated this portion of the affidavit. Second, McKnight maintains that Sircus's affidavit omitted material exculpatory information— namely, the fact that three eyewitnesses to the crime described the bank robbers as men in their late twenties or early thirties, when McKnight was fifty-one at the time. In sum, McKnight contends that because his arrest was illegal, he is entitled to a new trial or to a post-trial evidentiary hearing under *Franks*. We address each argument in turn.

A

Under Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Motions under Rule 33 are "not favored and should be granted sparingly and only in exceptional cases." *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (internal quotation marks and citation omitted). To succeed on a Rule 33 motion, the movant has the "heavy burden" of proving five criteria:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence

resolve this question, however, as under de novo review, none of alleged errors McKnight identifies would have altered the probable-cause determination. *See id.*

would probably produce an acquittal.

*United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006) (quoting *United States v.*

*Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976)). If any one of these requirements is not

satisfied, the Rule 33 motion fails. *United States v. Jasin*, 280 F.3d 355, 365 (3d Cir.

2002).

McKnight requested a new trial based on "newly discovered evidence"—his

discovery that a part of Sircus's probable cause affidavit contained false information

about his residence. "Evidence is not 'newly discovered' if it 'was [actually] known or

could have been known by the diligence of the defendant or his counsel.'" *Cimera*, 459

F.3d at 461 (quoting *United States v. Bujese*, 371 F.2d 120, 125 (3d Cir. 1967)). As the

District Court noted, McKnight averred in his Rule 33 motion that he had known of the

misstatement *before* his trial, and had unsuccessfully asked his counsel to pursue this

concern at the suppression hearing held five days before trial. Further, the docket shows

McKnight and his counsel could have accessed the arrest warrant seven months before

trial, and thus he should have known of any false information in the warrant well before

his sentencing hearing. Accordingly, McKnight cannot satisfy the first requirement for a

new trial, and the District Court did not err in denying his motion.[2]

---

[2] McKnight has not satisfied the other requirements for a new trial: he neither provides evidence of his diligence nor explains how the misstatement about his address in the affidavit could be probative of his innocence at trial.

6

B

We next consider whether the District Court erred when it denied McKnight's request for a *Franks* hearing. Under *Franks*, a criminal defendant is entitled to challenge the validity of a warrant if he makes a "substantial preliminary showing" that (1) the affiant in the warrant affidavit made a "false statement knowingly and intentionally, or with reckless disregard for the truth," and (2) the statement was necessary for finding probable cause. 438 U.S. at 155–56. McKnight fails the first prong, as he provided no evidence that Sircus knowingly, intentionally, or recklessly misstated in the affidavit that witnesses informed him McKnight had resided at 1667 Haworth Street.

Nor has McKnight shown how Sircus's errors might have been relevant to a finding of probable cause. In a *Franks* proceeding, the court assesses materiality by removing allegedly false statements, inserting omissions, and determining whether probable cause nonetheless remains. *See, e.g.*, *United States v. Yusuf*, 461 F.3d 374, 383–84 (3d Cir. 2006). Here, even if one removes the alleged false statement—McKnight's address when he lived with his aunt—it remains that two individuals who know McKnight identified him as one of the robbers. Similarly, inserting the omitted information—that three eyewitnesses to the crime described the robbers as being in their twenties or thirties, while McKnight was in fact in his fifties—does not undermine the magistrate's finding of probable cause. Though the eyewitnesses did not provide a correct estimate of McKnight's age, they noted other characteristics (*i.e.*, race, height, weight)

7

that were consistent with McKnight's appearance. Further, one of the witnesses in question, Brittany Boggi, confirmed that McKnight was one of the men she observed surrounded by smoke on the day of the robbery.

Because McKnight did not establish the two elements required by *Franks*, the District Court did not abuse its discretion in denying him an evidentiary hearing regarding the validity of his arrest warrant.[3]

III

For the foregoing reasons, we will affirm the District Court's orders denying McKnight's motion for a new trial and his motion for reconsideration of that decision.

---

[3] Even if the District Court erred in denying McKnight a *Franks* hearing, he suffered no prejudice because the arrest yielded no evidence to suppress. During the trial, the prosecution submitted video of the crime, eyewitness accounts, and testimony from McKnight's two cousins that he had confessed to the crime. At no point did the prosecution offer evidence that constituted "fruits" of the arrest. Further, the accuracy of Sircus's affidavit and the adequacy of probable cause, and thus the lawfulness of McKnight's arrest, are irrelevant to his conviction. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (adhering to "the established rule that illegal arrest or detention does not void a subsequent conviction").